Michael EVANS, Plaintiff, Appellant,

v.

**FEDERAL EXPRESS CORPORATION,**
**Defendant, Appellee.**

No. 97–1397.

United States Court of Appeals,
First Circuit.

Heard Sept. 11, 1997.
Decided Jan. 9, 1998.

Sanford A. Kowal, Chestnut Hill, MA, for appellant.

James J. Rooney with whom Robert P. Joy, Morgan, Brown & Joy, Boston, MA, and Colby S. Morgan, Jr., Senior Attorney, Federal Express Corporation, Memphis, TN, were on brief, for appellee.

Before TORRUELLA, Chief Judge, COFFIN, Senior Circuit Judge, and BOUDIN, Circuit Judge.

BOUDIN, Circuit Judge.

Michael Evans brought suit in state court charging his former employer, Federal Express Corporation, with handicap discrimination under Massachusetts law. After removal and limited discovery, the federal district court granted summary judgment in favor of Federal Express. Evans now appeals. As Evans was the non-moving party, we set forth the version of events most favorable to him. *Morrissey v. Boston Five Cents Sav. Bank,* 54 F.3d 27, 31 (1st Cir.1995).

Federal Express hired Evans at the beginning of 1989 as a part-time freight handler at its Logan Airport facility in Boston. Evans' supervisor then, and throughout his tenure, was Kenneth Pierce. In 1991, Pierce approved a four-week leave of absence for Evans to enter a residential drug-treatment program for cocaine abuse at a New Hampshire hospital, the cost of which was paid by Evans' health insurance provided by the company.

When Evans entered the hospital program in 1991 to treat his cocaine addiction, he already had (in his own words) "a problem with alcohol." Whether he was treated for alcoholism at the hospital is unclear, but according to Evans, he learned there about alcoholism, and when he left the hospital, he entered an Alcoholics Anonymous program. Evans says that he did not drink for approximately a year thereafter.

In late 1992, Evans was warned by Pierce that his attendance record had become unsatisfactory. Within the next six months, Evans twice failed to report and was given a written warning on March 10, 1993; Evans says that these were ordinary sick days. In all events, in 1993, Evans was promoted to full-time status with Pierce's approval. Then, in or around November 1993, Evans was absent from work on account of his arrest in a matter unrelated to Federal Express. On February 16, 1994, Evans was again absent from work and failed to notify Pierce in advance, as required by company policy.

The following day Evans did appear and told Pierce that he wanted a further leave of absence to enter an alcohol rehabilitation program. According to Evans, Pierce had known since 1991 of Evans' alcoholism. After discussing the leave request with Evans, Pierce refused it, citing the heavy workload and Evans' previous four-week leave for drug rehabilitation. Pierce did give Evans two additional days of leave. Evans made no further leave request to Pierce, nor did he seek review of the matter at any higher level of Federal Express' management.

Evans was issued a new written warning because of his February 16 absence, and thereafter submitted a statement promising to comply with company leave policy in the future. However, in late February and again in early March 1994, Evans failed to show up for work or give advance notice. This led to a "last chance" written warning to Evans on March 10, 1994. Two days later, Evans again was absent from work without prior notice. On March 15, 1994, he was suspended with pay pending investigation and, under threat of discharge, Evans submitted a letter of resignation.

In June 1994, Evans filed a complaint with the Massachusetts Commission Against Discrimination, charging that Federal Express had discriminated against him because of a handicap—alcoholism—in violation of M.G.L. ch. 151B, § 4(16) which makes it unlawful

[f]or any employer ... to dismiss from employment ... or otherwise discriminate against, because of his handicap, any person alleging to be a qualified handicapped

person, capable of performing the essential functions of the position involved with reasonable accommodation, unless the employer can demonstrate that the accommodation required to be made to the physical or mental limitations of the person would impose an undue hardship to the employer's business.

Evans then pursued his claim in Massachusetts Superior Court.

Federal Express removed the case to federal court on grounds of diversity, and in due course moved for summary judgment. On February 6, 1997, the district court entered a memorandum and order granting the company's motion for summary judgment. The court said that Evans was discharged because his repeated, unexcused absences made him unqualified and not because he was an alcoholic. The district court also said that there was nothing that required Federal Express to give Evans "yet another opportunity to seek treatment" after "indulg[ing] Evans' errant work habits well beyond anything that the law could reasonably expect."

On Evans' appeal, we review the grant of summary judgment *de novo*, accepting Evans' version of all admitted or reasonably disputed facts. *Sargent v. Tenaska, Inc.*, 108 F.3d 5, 6 (1st Cir.1997). Massachusetts defines handicap to mean "a physical or mental impairment which substantially limits one or more major life activities of a person," a record of having such an impairment, or being regarded as having such an impairment. M.G.L. ch. 151B, § 1(17). Federal Express does not dispute that alcoholism constitutes a "handicap" under the Massachusetts statute.

The Massachusetts statute was based on the Federal Rehabilitation Act, 29 U.S.C. § 701 *et seq.* The latter, like the later Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, defines "disability" in words similar to "handicap" under the Massachusetts statute. And case law under both federal statutes treats alcoholism as a covered disability.

*E.g., Buckley v. Consolidated Edison Co. of New York*, 127 F.3d 270, 273 (2d Cir.1997) (ADA); *Leary v. Dalton*, 58 F.3d 748, 752 (1st Cir.1995) (Rehabilitation Act).[1]

For purposes of summary judgment, we accept Evans' claim that he was an alcoholic and that his employer—through Pierce's knowledge—knew of Evans' alcoholism; there was also some evidence that Pierce knew that Evans' absences were connected with alcohol.[2] Finally, on Evans' version of events, his resignation was involuntary, being induced by an explicit threat of discharge. *See GTE Products Corp. v. Stewart*, 421 Mass. 22, 653 N.E.2d 161, 168 (1995).

This brings us to the company's main arguments for summary judgment. The Massachusetts statute protects a "qualified" person against discharge or other discrimination "because" of a handicap. Federal Express argues that Evans was "not qualified for his job in view of his inability to conform to the attendance requirements." It also says that Evans' "alleged constructive discharge" was the result, not of his alcoholism but of his repeated abuse of the company's attendance policies.

The first argument is answered by the statute itself. True, the statute requires that the handicapped person be "qualified," and Evans does not dispute that regular attendance is a reasonable job requirement. Nor does he claim to have met the requirement. But the statute also equates the word "qualified" with being "capable of performing the essential functions of the position involved *with reasonable accommodation.*" M.G.L. ch. 151B, § 4(16) (emphasis added).

Evans' position is that he would have been able to attend his job regularly—and would therefore have been a "qualified person"—had he been given a second leave of absence for rehabilitation in order to overcome his alcoholism. If this is so, and if such a leave is a "reasonable" accommodation to extract from the company, Evans' lack of qualifica-

---

1. Both federal statutes also contain separate provisions dealing separately and less favorably with alcoholism and drug abuse. *See* 29 U.S.C. § 706(8)(c)(v); 42 U.S.C. § 12114(c). These provisions, by no means easy to interpret, have no counterpart in the Massachusetts statute.

2. The district court opinion questioned whether Pierce even knew that Evans' absences were connected to his alcoholism. However, Evans testified in his deposition that his request for leave was made in connection with his February 16 failure to report.

tion while an alcoholic likely is not a complete defense for the company. *See Labonte v. Hutchins & Wheeler*, 424 Mass. 813, 678 N.E.2d 853, 859 (1997).

The company's other argument—that Evans was not fired because of his alcoholism—is more troublesome for Evans. Evans does not claim that the company was generally hostile to alcoholics or made stereotype judgments about their potential abilities. *See Cox v. New England Tel. & Tel. Co.*, 414 Mass. 375, 607 N.E.2d 1035, 1041 (1993). Even on summary judgment the record permits no doubt that the immediate, subjective reason for the company's suspension of Evans was its concern with his absences. This is borne out by Evans' history of absences and warnings and the lack of any suggestion of pretext.

At first blush, this might seem to be conclusive against Evans, not least because a number of cases have upheld the discharge of alcoholics based on their misconduct. These include not only cases under the federal statutes but, even more in point, *Garrity v. United Airlines, Inc.*, 421 Mass. 55, 653 N.E.2d 173 (1995).[3] There the court upheld dismissal of a handicap suit by an airline attendant whose addiction to alcohol led to a disruption during flight.

But in *Garrity* and most of the federal cases, there is no indication that the employee had made a timely request for a reasonable accommodation that would have prevented the conduct. If the employee had done so, the firing *might* still be regarded as one "because" of a handicap or at least "because" of the denial. Otherwise, an employer could always withhold a reasonable accommodation needed by the worker and then discharge the worker "because" of inadequate performance. *Teahan v. Metro–North Commuter R. Co.*, 951 F.2d 511 (2d Cir.1991).

We are uncertain as to how the Massachusetts courts would resolve this issue; notions of "cause" are notoriously flexible and often conceal underlying choices of policy. Nor is it crystal clear whether Evans' request would be deemed timely. He made it only after several absences, well after one warning, and

after the conduct that prompted the second warning. On the other hand, Evans says that the earlier absences are explained and were not the basis for his discharge.

■ We need not resolve such issues in this case because we agree with the district court's final ground for summary judgment, namely, that the company was not obliged to give Evans a second leave of absence for substance abuse. Evans had already been given a month's leave to deal with cocaine addiction. His present claim rests on the view that in his circumstances a second leave to treat alcoholism was an obligatory reasonable accommodation. The district court said it was not, and we agree.

■ One element in the reasonableness equation is likelihood of success; and recoveries from substance abuse or addiction on one try are notoriously chancy. *See Whitlock v. Donovan*, 598 F.Supp. 126, 134 (D.D.C.1984), *aff'd sub nom. Whitlock v. Brock*, 790 F.2d 964 (D.C.Cir.1986). Here, Evans had already made one effort to deal with alcoholism at the time of his cocaine treatment and had not succeeded. It is one thing to say that further treatment made medical sense, and quite another to say that the law required the company to retain Evans through a succession of efforts.

■ Evans says that after he was discharged, he did undergo treatment and now holds down a job; but the company is entitled to be judged on what it knew at the time or could reasonably foresee (and for all we know the shock of the discharge is what helped Evans shape up). Nor does it matter if, as Evans says, the company sometimes gave multiple leaves. Federal Express was quite free to go beyond what the law requires, nor should it be discouraged from doing so.

Under federal law, it is close to an open issue whether a private company is ever required to provide a leave of absence to treat alcohol abuse; and the only case saying yes, overriding an EEOC statement to the contrary, stressed that this was the employee's

---

**3.** *See Mararri v. WCI Steel, Inc.*, 130 F.3d 1180 (6th Cir.1997); *Little v. FBI*, 1 F.3d 255 (4th Cir.1993); *Newland v. Dalton*, 81 F.3d 904 (9th Cir.1996).

first request.[4]  Even in a more sympathetic setting—a treatment for cluster migraines likely to achieve a remission for a substantial period—the Ninth Circuit declined to endorse multiple leaves.  *Kimbro v. Atlantic Richfield Co.*, 889 F.2d 869, 879 n. 10 (9th Cir.1989).

The Massachusetts SJC does not appear to have addressed the issue of leaves for treatment of alcoholism.  But its other decisions on reasonable accommodation are noticeably reluctant to insist on very much from employers in the face of real doubts whether the accommodation will solve the problem.  *See Beal v. Board of Selectmen of Hingham*, 419 Mass. 535, 646 N.E.2d 131, 137 (1995); *Cox v. New England Tel. & Tel. Co.*, 414 Mass. 375, 607 N.E.2d 1035, 1043 (1993).  As a diversity court, we cannot stretch state law on this issue even if we wished to do so.

*Affirmed.*

---

4.  *See Schmidt v. Safeway, Inc.*, 864 F.Supp. 991 (D.Or.1994).  *But see Mararri* criticizing *Schmidt*, and EEOC, Technical Assistance Manual on the Employment Provisions (I) of the ADA § 8.7, at VIII–5 (Jan. 28, 1992), *quoted in* B. Tucker, *Federal Disability Law in a Nutshell* 72 (1994).  Federal case law is more favorable to government employees because the Rehabilitation Act was initially read to impose special affirmative obligations.  *Rodgers v. Lehman*, 869 F.2d 253, 258–9 (4th Cir.1989).