United States Court of Appeals
For the First Circuit

No. 97-1696

ALEXANDRA TROY,

Plaintiff, Appellee,

v.

BAY STATE COMPUTER GROUP, INC.,

Defendant, Appellant.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Reginald C. Lindsay, U.S. District Judge]


Before

Torruella, Chief Judge,

Aldrich, Senior Circuit Judge,

and Boudin, Circuit Judge.



Bruce G. McNeill with whom Edward R. Wiest and Tarlow, Breed,
Hart, Murphy & Rodgers, P.C. were on brief for appellant.
Stephen G. Howard with whom Law Office of Stephen G. Howardwas on brief for appellee.

April 14, 1998

BOUDIN, Circuit Judge. Alexandra Troy sued her former
employer, Bay State Computer Group, Inc., for gender discrimination
and on other claims arising out of the loss of her job. 
Eventually, a large judgment was entered in favor of Alexandra
Troy, and Bay State now appeals. The central questions are the
sufficiency of the evidence in her favor and the effect to be given
a prior jury determination where a separate but overlapping claim
is thereafter tried to the judge.
Bay State is a company based in Charlestown,
Massachusetts, that sells computer equipment and provides services
for computer networks. On October 1, 1990, the company hired
Alexandra Troy as a "networking systems division administrator,"
primarily to act as a go-between for customers requiring network
service and Bay State's field service engineers. Her immediate
superior--unrelated to her despite the common last name--was George
Troy, the company's vice president of operations. The first 90
days of the new job were a probationary period. 
On November 6, 1990, Alexandra Troy's doctor told her
that she was pregnant and would require a brief hospitalization. 
With George Troy's permission, Alexandra Troy was absent on
November 7 and 8. When she returned to work, George Troy asked her
about her plans, and she told him that she intended to work until
the baby was born and then take maternity leave and return to Bay
State thereafter. 
In early January 1991, George Troy told Alexandra Troy
that her work was satisfactory and that she was now a permanent
employee. Later that month, he expanded her responsibilities,
designating her "administrator of operations." In mid-February,
Alexandra Troy was absent several days due to an illness unrelated
to her pregnancy. Shortly thereafter, complications related to her
pregnancy kept her out of the office for two additional days. When
she returned to work on February 21, following her doctor's advice
that she could do so, George Troy told her that "her body was
trying to tell her something" and that "her attendance was becoming
a serious problem." George Troy suggested that she accept a
discharge from Bay State and collect unemployment benefits instead
of taking an unpaid maternity leave. 
On returning to work the next day, Alexandra Troy sought
advice from the Equal Employment Opportunity Commission and later
in the day told George Troy that she was rejecting his suggestion
and would continue working. George Troy then told her that she was
discharged effective immediately. When she told him that the EEOC
had advised that Bay State could not fire her, George Troy told her
that if necessary he would say that there was no need for her job. 
Later, Alexandra Troy applied to the state for unemployment
compensation, and Bay State advised the agency that she had been
laid off due to a lack of work. 
In May 1991, Alexandra Troy filed a complaint with the
Massachusetts Commission Against Discrimination and with the EEOC. 
In response, Bay State said that Alexandra Troy had been terminated
for poor attendance. After receiving the necessary clearance,
Alexandra Troy brought the present suit against Bay State in state
court, and Bay State removed the suit to federal district court. 
Alexandra Troy's complaint set forth a number of claims 
but only one twinned claim concerns us on this appeal: that her
discharge constituted gender discrimination in violation of Title
VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et seq.,
and of Mass. Gen. Laws ch. 151B, 4. After discovery, the state
claim under chapter 151B was tried to a jury in October 1995, while
the Title VII claim was reserved for later consideration by the
judge. The jury found for her on the state discrimination claim
and awarded her $15,000 in back pay and $14,300 for emotional
distress. 
The district court then asked the parties for proposed
findings and argument on the Title VII claim. On July 15, 1996,
the district court entered a decision on the Title VII claim. Like
the jury, the district court found that gender discrimination had
been proved. However, the district court found that a much larger
amount of back pay was due (just over $90,000), plus prejudgment
interest, and awarded almost as much in attorneys' fees and costs. 
After further adjustments, the court in March 1997 entered a new
final judgment in the amount of $273,099.67.
On appeal, Bay State first argues that the evidence was
insufficient to support a verdict of gender discrimination. It
implicitly concedes that to fire Alexandra Troy simply because she
was pregnant would constitute gender discrimination, assuming that
she remained qualified for her job. But Bay State asserts that the
evidence overwhelmingly showed that she was fired for poor
attendance and that no factfinder could properly determine
otherwise.
The case is actually a close one, despite the terrible
impression that Bay State's conduct and statements must have made
upon the jury. The discrimination statutes are not medical leave
acts, and Bay State would not automatically be liable for gender
discrimination if it had discharged Alexandra Troy for poor
attendance under standards applied to other employees, even if the
poor record were due to pregnancy complications. Cf. Evans v.
Federal Express Corp., 133 F.3d 137, 140 (1st Cir. 1998). But it
would be liable if poor attendance was a pretext and the actual
reason was her pregnancy. See St. Mary's Honor Ctr. v. Hicks, 509
U.S. 502, 510-11 (1995).
The difficulty, of course, is that the two categories--
her job conduct and her medical condition--are not wholly distinct. 
A plausible reading of the situation, not necessarily the only one,
is that George Troy was concerned because Alexandra Troy was
pregnant and had already missed several days of work on that
account, and he believed that she was likely thereafter to have a
poor attendance record. Not only did he tell Alexandra Troy that
"her body was trying to tell her something," but he then repeated
the same statement to another official, adding that "not working
was the best thing for [Alexandra Troy]."
But George Troy knew (or the jury could have so found
from the evidence) that Alexandra Troy's doctor had found no
continuing problem incident to her two-day absence. The jury could
conclude from this that George Troy acted on little more than a
stereotypical judgment that pregnant women are poor attendees. 
Under the law, this kind of stereotyping amounts to gender
discrimination: the company could not discharge her simply for
being pregnant on the speculation that she would probably be
rendered unable to fulfill the requirements of the job. Cf. Smithv. F.W. Morse & Co., 76 F.3d 413, 420 (1st Cir. 1996); Macauley v.
Massachusetts Comm'n Against Discrimination, 379 Mass. 279, 281
(1979).
The jury was not obliged to accept George Troy's later
explanation that she had been fired for poor attendance. Not only
were her absences limited in number, but George Troy had little
credibility. According to Alexandra Troy, George Troy told her at
the time that she was discharged: "Alex, it doesn't pay to be
honest; if it comes right down to it, I will say there simply was
no need for your job." And while Alexandra Troy was an interested
witness, George Troy repeated his "body trying to tell her
something" remark in a later discussion with another Bay State
official. The official (a woman) objected, and George Troy
allegedly replied "if I am ever asked, I will deny I ever said it."
In considering a claim of insufficient evidence, we take 
the record in the light most favorable to the verdict. Sinai v.
New Eng. Tel. & Tel. Co., 3 F.3d 471, 472 (1st Cir. 1993), cert.
denied, 513 U.S. 1025 (1994). What has already been said is enough
to show that the jury was not irrational in concluding that
stereotypes about pregnancy and not actual job attendance were the
cause of the discharge, and that the company's other multiple
explanations were pretext. Similarly, the district judge cannot be
deemed "clearly erroneous" for reaching the same conclusion,
McKinnon v. Kwong Wah Restaurant, 83 F.3d 498, 508 (1st Cir. 1996),
even if the federal rules as to pretext may differ from the state's
rules.
Bay State's other main challenge to the judgment is its
claim that the district judge could not award more back pay than
did the jury. Alexandra Troy disputes that the issue was
preserved, but we find that it was. After the jury verdict and
before the judge's own decision, Alexandra Troy made clear that she
was seeking a larger back pay award from the judge; Bay State
promptly objected to this request on the ground that the jury
decision prevented it--and did so well before the district judge
made the larger award.
The jury's award was made under chapter 151B, and the
district court rested its larger award on Title VII. But no one
has suggested that there was any pertinent difference in the
standards for measuring back pay; under both rubrics Alexandra Troy
was entitled to recover, although only once, for what she would
have earned absent the discharge, reduced by any compensation that
she actually received during the same period and any additional
amount that she would have received through reasonable efforts to
mitigate her damages. See 42 U.S.C. 2000e-5(g)(1); Conway v.
Electro Switch Corp., 402 Mass. 385, 389 (1988). 
The jury did not explain its reasons for awarding only
$15,000 as back pay but, given the arguments made to it at trial,
the jury may have thought Alexandra Troy did not do enough to
mitigate damages; indeed, Bay State argued that it had offered to
take her back. The district judge, by contrast, simply multiplied
Troy's weekly salary at Bay State by the number of weeks she
remained unemployed after her discharge prior to the date of the
trial and deducted periods of unpaid maternity leave. He also
allowed prejudgment interest. 
Prejudgment interest aside, the difference in calculation
in back pay turns on issues that are either strictly factual or
fact-bound applications of general principles like mitigation. It
is not surprising that two different factfinders should view the
matter differently, and probably either outcome could be supported
on this record. The question posed is whether the district judge
was bound to respect the jury's prior calculation of back pay. 
The problem arises because the state claim under chapter
151B carries a Seventh Amendment right to a jury trial, seeGallagher v. Wilton Enter., Inc., 962 F.2d 120, 123-24 (1st Cir.
1992), but at the time of trial in this case, Alexandra Troy's
preexisting Title VII claim was still treated as an equitable one
not subject to the Seventh Amendment and triable to the judge.
Where there are overlapping claims, some triable to the judge and
some to the jury, the Supreme Court has instructed that the jury
claims be resolved first in order to protect the right to jury
trial. Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 508-11
(1959).
In setting this priority rule, the Supreme Court appeared
to conclude that without it, earlier findings by the judge on
common issues would bind the jury under some variant of collateral
estoppel. See Beacon Theatres, 359 U.S. at 503-04, 506-08. 
Building on this reference, it has become common, in this circuit
as in others, to say that the judge is normally bound by earlier
jury findings in the same case on common issues. See Combustion
Eng'g, Inc. v. Miller Hydro Group, 13 F.3d 437, 444 (1st Cir.
1993); Lopez v. Garriga, 917 F.2d 63, 67 (1st Cir. 1990); 18
Wright, Miller & Cooper, Federal Practice and Procedure 4418, at
174-75 & n.22 (1981 & Supp. 1997) collecting cases). We agree
with Judge Posner that, although the rule "might be questioned as
an original matter," it is now well-established. McKnight v.
General Motors Corp., 908 F.2d 104, 113 (7th Cir. 1990), cert.
denied, 499 U.S. 919 (1991).
The rule is beneficial in minimizing inconsistencies,
even if the efficiencies in timesaving are not as great as with
collateral estoppel. And the rule has a further benefit insofar as
it avoids giving one side, but not the other, two bites at the sameapple: if the judge retries damages, a plaintiff will
automatically get the larger of the two awards. Of course, the
judge can always set aside the jury verdict, large or small, if it
is irrational; but no such attack on the jury award could be
sustained in this case.
In our view, the presumptive rule is that the first
factfinder binds the second on factual issues actually litigated
and necessary to the result. This is not a constitutional rule,
but one of economy similar to collateral estoppel. While that term
usually refers to the binding effect of a prior final judgment, the
underlying objectives are similar, and the numerous exceptions to
collateral estoppel are probably good guides in cases like this
one. See Restatement (Second), Judgments, 28 (1982). However,
none of those exceptions, or any other, has been invoked in this
case.
If Congress directed in Title VII cases that the district
judge ignore a prior jury finding, an exception to the presumptive
rule of consistency would be warranted. There is no such explicit
directive in Title VII, but perhaps an inference as to policy might
be drawn from legislative history, depending on why Title VII
relief was originally cast in equitable form. But the 1991
amendment to Title VII (see note 2, above), regardless of its
technical effective date, shows that Congress has no present policy
objection to jury findings in Title VII cases. See Ballard
Shipping Co. v. Beach Shellfish, 32 F.3d 623, 631 (1st Cir. 1994).
In the present case, Alexandra Troy has not suggested any
reason why, assuming the issue was properly preserved by Bay State,
the jury finding of back pay should not control the district judge
under what we hold to be the general rule. Accordingly, we think
that the district court was obliged to accept the $15,000 figure as
the proper amount of back pay. However, the decision to award pre-
judgment interest is within the trial court's discretion, Hogan v.
Bangor & Aroostook R. Co., 61 F.3d 1034, 1038 (1st Cir. 1995), and
we see no reason why awarding prejudgment interest on the back pay
award as computed by the jury would not be appropriate. 
Bay State has also objected to the district court's
failure to deduct from its own back pay judgment the amount of
$20,984, constituting income earned and employment compensation
collected by Alexandra Troy between the time she was fired by Bay
State and the time she brought her lawsuit. Alexandra Troy, in
turn, argues that Bay State has waived this argument. As far as we
can tell, the jury's back pay determination included reductions for
any offsetting benefits obtained by Alexandra Troy, and the
separate figure determined by the district court is moot in light
of our determination that the district judge was bound by the
jury's determination. 
Finally, Bay State argues that the district court abused
its discretion by awarding Alexandra Troy the full amount of
attorneys' fees she requested. Determining the fee award under
Title VII is committed to the "particularly broad" discretion of
the trial court. Phetosomphone v. Allison Reed Group, Inc., 984
F.2d 4, 6 (1st Cir. 1993). But Bay State argues that the award of
attorneys' fees and costs ($99,584.91) must be an abuse of
discretion because it vastly exceeds the amount of damages to which
Alexandra Troy is properly entitled ($29,300 plus interest on back
pay yet to be recomputed).
One element that a district court considers in awarding
fees is the actual amount of compensatory damages recovered,
although it may be "only one of many factors." City of Riversidev. Rivera, 477 U.S. 561, 574 (1986) (plurality opinion). And in
this case, the district court's ruling on the fee application
appeared to give weight to the very substantial Title VII award
made by the district court. In these circumstances, we think it
best that the district judge make a fresh determination of the
award of attorneys' fees in light of the greatly reduced back pay
award that will be entered as part of the new final judgment.
The judgment is vacated and remanded for proceedings
consistent with this opinion. Each side shall bear its own costs
on this appeal.