**Elizabeth CRIADO, Plaintiff–Appellant,**

**v.**

**IBM CORPORATION, Defendant–Appellee.**

**IBM CORPORATION, Plaintiff–Appellant,**

**v.**

**Elizabeth CRIADO, Defendant–Appellee.**

**Nos. 97–1341, 97–1342.**

United States Court of Appeals, First Circuit.

Heard Oct. 8, 1997.

Decided June 5, 1998.

---

438

·Jeffrey G. Huvelle, with whom Michael A. Dawson, Covington & Burling, Alfredo M. Hopgood and McConnell Valdés were on brief for appellant IBM Corporation.

Enrique J. Mendoza–Méndez, with whom Mendoza & Bacó was on brief for appellee Elizabeth Criado.

Before STAHL, Circuit Judge, GODBOLD * and CYR, Senior Circuit Judges.

GODBOLD, Senior Circuit Judge.

The defendant IBM Corporation appeals from a final judgment in favor of plaintiff Elizabeth Criado on her claim that her employment with IBM was terminated in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112; and the Puerto Rico Indemnity Law, 29 L.P.R.A. § 185a-d. IBM questions the sufficiency of the evidence in numerous respects. By cross-appeal Criado questions elements of the damage award in her favor.[1]

## I. Factual and Procedural History

The jury was entitled to find the following facts, either as undisputed or based on sufficient evidence.

Elizabeth Criado relocated to Puerto Rico from New York in 1987 to assume a full-time position in IBM's marketing department. From 1987 to 1993 she performed her job very well, often receiving commendations and

---

* Of the Eleventh Circuit, sitting by designation.

1. The parties do not discuss Puerto Rico law, therefore we do not.

recognition for surpassing marketing and sales goals. During this period Criado was under the care of a psychiatrist, Dr. Michael Woodbury, who diagnosed her with Attention Deficit Disorder· and treated her for an anxiety disorder and bouts of depression. Although the bouts of depression often required temporary medication, none was so severe that it required Criado to take a leave of absence.

In 1994 Criado's mental impairment worsened as the result of both personal and professional stressors. She was married in January of 1994. Her new husband had five children from a previous marriage, some of whom resided with Criado and her husband. In May a new manager, Kathy Lee, replaced Criado's former supervisor. Lee's managerial style was more formal· and rigid· than Criado's previous supervisors, and Criado considered her inept. All of these factors caused Criado's condition to degenerate rapidly.

By June of 1994 Criado's anxiety disorder and depression had worsened to the point that she began to request accommodations for her condition. Dr. Woodbury, her doctor, suggested that she take a disability leave so that he could treat her condition, give her time to recuperate, and experiment with possible medication if needed. He thought that if Criado were granted a one-month leave he could ameliorate· her condition to the point that she could return to work and once again be a productive employee despite her illness. Following IBM's procedure he requested a disability leave for Criado to begin June 22, but it was not until mid-July that the leave was granted. IBM's medical department only granted leave through August 1 because that was the date originally requested by Dr. Woodbury.

Criado was not well enough to return to work in August, and Dr. Woodbury tried to convey this information by fax to IBM's medical unit in New York, by sending evaluations dated August 4 and 12. The parties dispute whether IBM received the August 12 fax, although evidence showed that Woodbury's office made a one-minute telephone call to IBM's medical department fax number on August 12, indicating that a fax was transmitted. Woodbury tried to make sure that all communication concerning Criado was between himself and IBM, because he thought that Criado's treatment depended on her isolation from IBM affairs. However, supervisor Lee continued to contact Criado directly, and on August 17 she informed Criado that her leave of absence had not been extended past August 1, and, because she had failed to return to work, her employment with IBM had been terminated. Subsequent to this termination letter, Dr. Woodbury wrote IBM asking that it reconsider Criado's termination. He attached his evaluations dated August 4 and August 12. He continued to say that Criado's condition would improve enough for her to return to work if she were given more time away from IBM. He also informed IBM that the termination letter had worsened Criado's condition.

IBM describes Criado's termination as a misunderstanding of the fact that she, through the doctor, was seeking additional leave time after the three-week leave expired, which arguably related to Dr. Woodbury's efforts to pass information by fax to IBM's medical department in New York. But, assuming the faxes did not reach the medical department, it is undisputed that Dr. Woodbury by subsequent letter sent information on Criado's condition and requested reconsideration of· her termination. IBM refused to reconsider Criado's termination, and on August 28, 1995, she filed suit against IBM alleging that it had discharged her in violation of the ADA and the Puerto Rico Indemnity Law.

A jury returned a verdict in favor of Criado on· her federal and state claims, and awarded her $200,000 in compensatory damages, $209,139 for back pay, $46,384 for front pay, and $250,000 in punitive damages. The $450,000 in compensatory and punitive damages were reduced to $300,000 pursuant to a statutory damages cap found at 42 U.S.C. § 1981(b)(3)(D). The court did not award prejudgment interest or order IBM to reinstate Criado. After the parties filed a series of post-trial motions the district court decided to reconsider the issue of reinstatement and held an evidentiary hearing to determine whether it had erred in failing to order IBM

to reinstate Criado. After this hearing the court determined that Criado's position had been eliminated in 1995 so that reinstatement was not warranted. The court further found that it would not order Criado's reinstatement to an alternate position because of her past antagonistic relationship with supervisors. Also, the court denied Criado's motion asking for an award of pre-judgment interest.

Each party filed a timely notice of appeal from the judgment, and the appeals were consolidated. We affirm the district court on all issues raised by IBM and Criado.

## II. IBM's Appeal

### A. Issues and standards of review

At times IBM presents its issues as though purely turning on questions of law, but the central issue involves sufficiency of the evidence as raised by a Rule 50(b) motion. IBM asserts that Criado did not present sufficient evidence (1) that she has a disability; (2) that she was a qualified individual; (3) that the accommodation she requested was reasonable; and (4) that her employment was terminated because of a disability.

■ When examining denial of a motion for a judgment as a matter of law under Rule 50(b) we review de novo the sufficiency of the evidence. However, we employ the same determinative standards utilized by the district court. We cannot evaluate "the credibility of witnesses, resolve conflicts in testimony, or evaluate the weight of evidence," and we must affirm unless "the evidence, viewed from the perspective most favorable to the nonmovant, is so one-sided that the movant is plainly entitled to judgment, for reasonable minds could not differ as to the outcome." *Gibson v. City of Cranston*, 37 F.3d 731, 735 (1st Cir.1994) (citations omitted).

■ IBM questions the damages awarded to Criado, including the awards of front and back pay and the assessment of punitive damages. Deciding whether to uphold a jury's award of damages is within the district court's discretion, and we will not disturb this discretion unless we find "strong evidence of a lapse in judgment." *Selgas v.*

*American Airlines, Inc.*, 104 F.3d 9, 12 (1st Cir.1997); *see also Fishman v. Clancy*, 763 F.2d 485, 489–90 (1st Cir.1985) (juries have wide discretion in determining the amount of punitive damages, and the trial court has broad discretion to affirm the jury's award of damages).

### B. Criado's burden under the ADA

■ The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability...." 42 U.S.C. § 12112(a). To prevail on an unlawful discrimination claim under the ADA a plaintiff must prove three things by a preponderance of the evidence: first, she must show that she was disabled within the meaning of the Act; second, she must prove that with or without reasonable accommodation she was a qualified individual able to perform the essential functions of the job; and third, she must show that the employer discharged her because of her disability. *Jacques v. Clean–Up Group, Inc.*, 96 F.3d 506, 511 (1st Cir.1996).

Under the ADA, the term "discriminate" embodies "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability ... unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A). The ADA defines "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* § 12111(8). The Act recognizes that a reasonable accommodation may include "job restructuring, part-time or modified work schedules," and other similar accommodations. *Id.* § 12111(9)(B).

### C. Criado's disability

■ IBM contends that the court should have granted its motion for judgment as a matter of law because Criado's impairment is not a disability as defined by the ADA. The ADA defines disability as:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). EEOC guidelines identify several factors to assist in determining whether a particular "disability" is of such severity that it comes within the protection intended by ADA. These factors include:

(i) The nature and severity of the impairment;

(ii) The duration or expected duration of the impairment; and

(iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

29 C.F.R. § 1630.2(j)(2). IBM views Criado's adjustment disorder as a temporary mental condition that could not qualify as a disability under the ADA. Examining the evidence under the standard required for review of a Rule 50 motion, we hold that Criado presented evidence that could have allowed a rational jury to determine that her disability was not temporary. She had been seeing her physician for seven years and had often had periods of depression, though the particular episode is the only one that required absence from work. Furthermore, she had been diagnosed with Attention Deficit Disorder (ADD), a permanent disability, and her physician testified that the ADD compounded her depression and anxiety disorders.

IBM points to evidence from Criado's physician that her condition was temporary and that she would completely recover after a short leave from work. But the jury could have found that Criado and her physician only intended that the accommodation she requested was temporary, not the disability itself.

Criado also presented evidence that allowed the jury to find that her mental disorders had substantially impaired the major life activity of working. This court has recognized that in some circumstances depression can constitute a disability under the ADA. See Ralph v. Lucent Techs., 135 F.3d 166, 168 (1st Cir.1998) (assuming that plaintiff's depression constituted a disability under the ADA for the purpose of determining whether he had a probability of success on the merits of his claim and thus deserved injunctive relief); E.E.O.C. v. Amego, Inc., 110 F.3d 135, 141 (1st Cir.1997) (assuming for summary judgment purposes that plaintiff's depression and post-traumatic stress disorder rendered him "a disabled person within the meaning of the ADA"). But see Soileau v. Guilford of Maine, Inc., 105 F.3d 12, 15 (1st Cir.1997) (finding no disability because the plaintiff's episodic depression did not substantially limit any major life activity).

IBM questions whether Criado had a permanent disability, because prior to May and June of 1994 none of her major life activities was substantially impaired by her bouts with depression. Furthermore, her physician predicted she would be fully able to perform her job after she returned from her requested leave. But by the time Criado requested the leave of absence she had become unable to perform some of the functions of her job. She was having trouble dealing with stress and relating to both co-workers and clients. Depression and anxiety were causing sleep deprivation which affected her timeliness and ability to report to work. This evidence showed that her mental impairments had substantially limited her ability to work, sleep, and relate to others. Overall, there was evidence indicating that she was unable to adequately perform her job as she had in the past. That her depression had been adequately treated through therapy in the past and was expected to be adequately treated through therapy and medication in the future does not establish that she does not have a disability. See Arnold v. United Parcel Serv., Inc., 136 F.3d 854, 859 (1st Cir.1998) ("Both the explicit language and the illustrative examples included in the ADA's legislative history make it abundantly clear that Congress intended the analysis of an 'impairment' and of the question whether it 'substantially limits a major life activity' to be made on the basis of the underlying (physical or mental) condition, without considering the ameliorative effects of medi-

cation, prostheses, or other mitigating measures.") (citing H.R.Rep. No. 101–485, pt. III, at 28 (1989), *reprinted in* 1990 U.S.C.C.A.N. 445, 451; H.R.Rep. No. 101–485, pt. II, at 52 (1990), *reprinted in* 1990 U.S.C.C.A.N. 303, 334; S.Rep. No. 101–116, at 23 (1989)); *Krocka v. Bransfield,* 969 F.Supp. 1073, 1085 (N.D.Ill.1997) (summary judgment for employer not warranted where plaintiff's ability to function generally and to interact with others—and therefore to work—were substantially limited before he was treated for depression with Prozac and therapy).

Proving the elements of a mental disability will not be as easy or as clear cut as cases of physical disability. But, though mental impairments create special problems under the ADA, Congress chose to recognize these as disabilities under the Act. *Cf. Arnold,* 136 F.3d at 861 ("Conceptually, it seems more consistent with Congress's broad remedial goals in enacting the ADA, and it also makes more sense, to interpret the words "individual with a disability" broadly, so the Act's coverage protects more types of people against discrimination.").

The evidence of Criado's disability was sufficient.

### D. Qualified individual

■ There is no merit to IBM's argument that the evidence is insufficient to entitle a jury to find that Criado is a qualified individual who could perform the essential functions of her job. Whether a person is a qualified individual under the ADA is comprised of two separate inquiries. First, the person must possess "the requisite skill, experience, education and other job-related requirements" for the position, and second, must be able to perform the essential functions of the position with or without reasonable accommodation. *See* 29 C.F.R. § 1630.2(m) (EEOC guidelines). Criado undoubtedly meets the first qualification. Before her disorder worsened she had received numerous awards and commendations for her superior work performance. In considering the second question we will assume for the purposes of this query that the leave requested by Criado was a reasonable accommodation. Criado's physician testified that if given a significant leave she could adjust to her situation and after he experimented with medication she might return to her previous level of functionality. This evidence indicates that with a reasonable accommodation Criado could perform the essential functions of her job.

The evidence that Criado was qualified was sufficient.

### E. Reasonable accommodation

■ IBM contends that, even assuming Criado was disabled and qualified, it did not violate the ADA because the accommodation she requested was not reasonable. Reasonable accommodations under the ADA can include "[j]ob restructuring; part-time or modified work schedules; [or] reassignment to a vacant position; ... and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B). A leave of absence and leave extensions are reasonable accommodations in some circumstances. *See Rodgers v. Lehman,* 869 F.2d 253, 259 (4th Cir.1989) (decided under section 501(b) of the Rehabilitation Act and finding leaves reasonable accommodations for alcoholics); *Kimbro v. Atlantic Richfield Co.,* 889 F.2d 869, 878–79 (9th Cir.1989) (interpreting an analogous state statute); 29 C.F.R. pt. 32, App. A(b) (Department of Labor regulations announcing that a reasonable accommodation may require an employer "to grant liberal time off or leave without pay when paid sick leave is exhausted and when the disability is of a nature that it is likely to respond to treatment of hospitalization"); 29 C.F.R. pt. 1630, App. (EEOC interpretive guidance on the ADA stating that a reasonable accommodation "could include permitting the use of accrued paid leave or providing additional unpaid leave for necessary treatment"). Whether the leave request is reasonable turns on the facts of the case. *Compare Ralph,* 135 F.3d at 172 (for the purpose of granting injunction, success on the merits was likely because employer may be required to grant additional accommodations beyond a 52–week leave with pay for employee who suffered a mental breakdown) *with Evans v. Federal Express Corp.,* 133 F.3d 137, 140–41

(1st Cir.1998) (employer not required to grant an additional leave of absence for employee to receive treatment for alcohol abuse where prior leave was granted for employee to seek treatment for cocaine addiction).

■ In *Kimbro* the Ninth Circuit recognized that an employee who suffered from acute migraine episodes was justified in requesting a temporary leave of absence as an accommodation for his disability where the leave would have allowed his doctor to formulate an effective treatment. *Kimbro*, 889 F.2d at 879 ("As long as a reasonable accommodation available to the employer could have plausibly enabled a handicapped employee to adequately perform his job, an employer is liable for failing to attempt that accommodation.").

Like the plaintiff in *Kimbro*, Criado offered evidence tending to show that her leave would be temporary and would allow her physician to design an effective treatment program. Furthermore, IBM provides all employees with 52 weeks of paid disability leave. In explaining this policy an IBM management representative testified that disability leaves did not financially burden IBM because it recognized that it was always more profitable to allow an employee time to recover than to hire and train a new employee. This testimony prevents IBM from asserting that Criado's leave produced an undue burden on its operations. Also, Criado was not asking for more leave than would be granted to a non-disabled, sick employee.[2] Because Criado's physician was optimistic that the leave would ameliorate her disability, the jury could find her request a reasonable accommodation.

Considering the facts in the light most favorable to the verdict we find no error in the district court's denial of IBM's motion for a judgment as a matter of law on the issue of whether Criado's leave request was a reasonable accommodation.

### F. Reason for Criado's termination

IBM asserts that it terminated Criado's employment because of miscommunication between Dr. Woodbury and its New York medical office, concerning her request for an extended leave period and her failure to report to work, rather than because of her disability or her need for an accommodation and, IBM says, since liability under the ADA requires that an employer has discriminated on the basis of the employee's disability, the district court should have granted judgment as a matter of law in its favor. However, IBM's doctor acknowledged that the evaluations of August 4 and 12 would have supported Criado's request for additional leave.

Moreover, IBM's position ignores its duty to accommodate under the ADA. IBM was on notice that Criado was suffering from a mental impairment and that she needed time to adjust to her exacerbated condition. "An employee's request for reasonable accommodation requires a great deal of communication between the employee and employer[;] ... both parties bear responsibility for determining what accommodation is necessary." *Bultemeyer v. Fort Wayne Community Schools*, 100 F.3d 1281, 1285 (7th Cir.1996) (also noting that "[i]n a case involving an employee with mental illness, the communication process becomes more difficult," and "[i]t is crucial that the employer [is] aware of the difficulties, and help the other party determine what specific accommodations are necessary") (internal quotations and citation omitted). If the termination was the result of a communication mistake Criado should have been reinstated once her physician explained her condition and prognosis and asked for additional leave. *See Bultemeyer*, 100 F.3d at 1286 (holding that although physician's letter requesting an accommodation for disabled employee came after employer's decision to terminate, employer should have "reconsider[ed] the decision to terminate his employment").

■ Asserting that the termination was based on Criado's absenteeism rather than her disability does not justify IBM's action where the absence was the requested accommodation. Allowing a disabled em-

---

**2.** This fact is important because IBM points out that the legislative history of the ADA indicates that Congress did not intend for an individual with a disability to be entitled "to more paid leave time than non-disabled employees." *See* S.Rep. No. 101–116, at 31 (1989).

ployee a one-month leave of absence does not absolve an employer's duty to accommodate, especially where the extra leave requested is not expected to be prolonged or perpetual. *See Ralph,* 135 F.3d at 171–72 ("The defendant argues that it has already made a reasonable accommodation to the plaintiff's disability by giving him 52 weeks of leave with pay, plus changing his work assignment and supervisor. The duty to provide reasonable accommodation is a continuing one, however, and not exhausted by one effort."). Considering these facts the jury could have found that IBM terminated Criado because of her disability.

### G. Damages

#### (1) Back and front pay

■ The district court's damages award included a back pay award, a front pay award, a compensatory damage award, and a punitive damage award. We hold that the evidence presented, viewed in the light most favorable to the verdict, properly supported the awards of back pay and front pay.

Specifically, IBM contends that, even if the verdict in favor of Criado was proper, the amount of damages should be reduced because Criado would have been terminated in March 1995 as a result of an IBM reduction in force. Therefore, IBM says, back pay should have been limited to the period from August 1994, when Criado was terminated, to March 1995, and that no award of front pay was justified because reinstatement was impossible. In considering whether Criado's damages award was proper the district court made findings of fact that supported the jury's awards. "This court sets aside such findings only if they are 'clearly erroneous.'" *Scarfo v. Cabletron Sys., Inc.,* 54 F.3d 931, 952 (1st Cir.1995) (quoting Fed.R.Civ.P. 52(a)).

The district court agreed with IBM that reinstatement was not a proper remedy for Criado for several reasons. Initially it found that Criado's position at IBM was eliminated in March of 1995. However, the court did not make a conclusive finding on whether Criado would have been hired for a different position in another department at IBM had she not been previously terminated. Instead it found that even if she was qualified for another open position at IBM it would not order reinstatement because of her relationships with her past supervisors. The court limited Criado's front pay to a period of six months noting that at that time Criado should return to the work force. The district court also found that "plaintiff has been made whole through awards of front and back pay."

The district court's factual findings are not clearly erroneous, and it did not abuse its discretion in awarding back pay and a limited amount of front pay where the jury determined that such a remedy was warranted by the facts. *See Selgas,* 104 F.3d at 12 (A court's decision to uphold a jury's award of damages is within the district court's discretion, and we will not disturb this discretion unless we find "strong evidence of a lapse in judgment.").

#### (2) Punitive damages

■ This circuit has held that under federal law the evidence of intent that is necessary to support a punitive damages award "is the same [evidence of] 'intent' that is required for a finding of discrimination in the first place." *Dichner v. Liberty Travel,* 141 F.3d 24 (1st Cir.1998) (citing *Rowlett v. Anheuser-Busch, Inc.,* 832 F.2d 194, 205 (1st Cir.1987) (recognizing that "the state of mind necessary to trigger liability for the wrong is at least as culpable as that required to make punitive damages applicable")). *Rowlett,* relying on *Smith v. Wade,* 461 U.S. 30, 52–54, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983), held that a finding of intentional discrimination is sufficient to warrant punishment for a defendant in order to deter future similar conduct if the jury exercising its "discretionary moral judgment" so decides. *Rowlett,* 832 F.2d at 205–06.

The evidence in this case was sufficient to support a finding of intentional discrimination; therefore, it was also sufficient to support an award of punitive damages. We cannot say that the modified, combined punitive and compensatory damages award of $300,000 is grossly excessive. Accordingly, we affirm the district court's award.

### III. Criado's Cross–Appeal

#### A. Standard of Review

In her cross-appeal Criado contends that the district court erred by failing to award prejudgment interest and by refusing to order her reinstatement. Both of these decisions are within the district court's discretion, and we review them only for abuse of that discretion. *See Hogan v. Bangor & Aroostook R. Co.*, 61 F.3d 1034, 1038 (1st Cir.1995) (whether to award prejudgment interest is within discretion of district court); *Rosario–Torres* v. *Hernández–Colón*, 889 F.2d 314, 320 (1st Cir.1989)("[R]einstatement is a remedy which lies within the discretion of the trial court.").

#### B. Prejudgment interest

 The decision to award prejudgment interest is within the discretion of the trial court. *Hogan*, 61 F.3d at 1038. The district court found that the large award of damages to Criado made her whole and was sufficient to deter IBM from future wrongdoing. This decision is adequately supported and is not clearly erroneous. Considering the wide latitude the district court has in fashioning an appropriate remedy we find no abuse of discretion on the part of the district court in determining that prejudgment interest was not appropriate.

#### C. Reinstatement

Following the jury trial the trial court held a full evidentiary hearing on the issue of reinstatement. It found that the position Criado's held at IBM was eliminated soon after her discharge. Furthermore, it found that even if an alternative position existed at IBM for which Criado was qualified, it would not order reinstatement because of Criado's past relationship with her former supervisors. The court noted the nature of Criado's disability and found that given the history of events between Criado and IBM reinstatement was not a feasible remedy. The decision of whether to order reinstatement is within the district court's discretion, *see Rosario–Torres*, 889 F.2d at 320, and it adequately supported that decision. We find no error in the denial of Criado's request for reinstatement.

### IV. Conclusion

We AFFIRM the district court on all issues raised by IBM and Criado.