NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2593
_____

ELISA DIAZ,
Appellant

v.

CITY OF PHILADELPHIA
_____

On Appeal from United States District Court
for the Eastern District of Pennsylvania
(E.D. of Pa. 2-11-cv-00671)
District Judge: R. Barclay Surrick
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 7, 2014

Before: FISHER, SCIRICA and COWEN, *Circuit Judges*.

(Opinion Filed: May 2, 2014)
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Plaintiff-Appellant Elisa Diaz challenges the District Court's grant of summary

judgment in favor of the City of Philadelphia (the "City") on her disability discrimination

claim brought pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. §

12112, as well as its denial of her motion to reconsider. We agree with the District Court's thorough and well-reasoned opinions and will therefore affirm.

I.

We write principally for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

The City hired Diaz as a Philadelphia police officer in June 2003, at which time she was assigned as a patrol officer in the 39th Police District. Her supervisor in the 39th District was Sergeant Randy Davis, who engaged in a pattern of sexual harassment against Diaz. As a result of the harassment, Diaz "experienced 'physical symptoms including stomach problems, insomnia, anxiety, depression and panic attacks,'" and her physician diagnosed her with irritable bowel syndrome ("IBS"), anxiety, and depressive disorder. App. at 11 (quoting Compl. ¶ 7). Diaz filed a sexual harassment complaint against Davis,[1] and was ultimately transferred to the 35th Police District.

Diaz continued to receive treatment for her IBS and anxiety while in the 35th District, where she was one of four female officers in an elite tactical unit. In February 2007, Diaz was injured while pursuing a suspect and was placed on injured on duty ("IOD") status for approximately eighteen months, during which time she received lost

---

[1] A Police Board of Inquiry held hearings on Diaz's complaint and ultimately suspended Davis for ten days and demoted him. An arbitrator later reversed that ruling.

wages and medical benefits pursuant to the Pennsylvania Heart and Lung Act ("HLA"), 53 Pa. Stat. Ann. § 637.

Diaz returned to patrol duty in the 35th District in the summer of 2008 and shortly thereafter approached her supervisor to discuss a reasonable accommodation because of her medical conditions. Diaz was moved to the Closed Circuit Television ("CCTV") Unit, which worked to monitor prisoners. While working in the CCTV Unit, Diaz performed satisfactorily, despite having some issues with dependability. She was also involved in an altercation with a coworker, Officer Tamika Fidler. The two had a disagreement over a data input issue, during which Diaz used offensive language and Fidler physically struck Diaz. Diaz was suspended for seven days.

In March 2009, Diaz's supervisors decided to move her out of the CCTV Unit and into a patrol unit. Diaz informed her supervisors that her medications (that she was taking to treat Post-Traumatic Stress Disorder ("PTSD")) could delay her reaction time, which could potentially pose a risk of harm to other officers, and that she "didn't think that it would be a good idea for [her] to be on patrol." App. at 145. Diaz requested to continue working inside until she "got better." App. at 145-46. Following this conversation, Diaz's supervisors got approval to have her evaluated by the City's Medical Evaluation Unit ("MEU"). The MEU evaluates officers who have not been injured while on duty. At the MEU, Diaz was evaluated by Dr. George Hayes and Dr.

3

Joan Beckwith, and was ultimately referred to a staff psychiatrist, Dr. Anthony Arce,[2] for evaluation based on her diagnosed PTSD. Based upon the evaluation by Drs. Hayes and Beckwith, Diaz was placed on "no duty" status.

In an effort to receive her full salary while on "no duty" status, Diaz sought benefits under the HLA, which applies when an officer is injured while on duty. The determination of an officer's IOD status is made by an adjuster for Comp Services, in conjunction with officials from the City's occupational safety office. Nadine Rice, an adjustor for Comp Services, consulted with Carol Madden in the safety office and determined that Diaz's injury did not occur while she was on duty. Beginning on March 12, 2009, Diaz utilized vacation and sick leave to extend her paid tenure with the City through June 2009, at which time she was placed on FMLA leave and a six-month medical leave of absence from June 2009 until December 2009. Pursuant to department policy, Diaz could have applied for a second six-month medical leave of absence, but she did not do so. When Diaz failed to return to work after her medical leave of absence expired in December 2009, the City terminated her employment on February 16, 2010.

Diaz filed an ADA complaint with the Equal Employment Opportunity Commission, which issued a Notice of Right to Sue on November 1, 2010. Diaz then

---

[2] There is a dispute about the nature of Dr. Arce's evaluation. Diaz contends that she attended an appointment, but that he was "rambling," called her "ungrateful," and walked out of the examination. App. at 147. Dr. Hayes claims that Dr. Arce reported that Diaz was "unwilling to appropriately participate in the interview" and "was very belligerent, hostile, angry and insulting." App. at 588. Dr. Arce currently suffers from Alzheimer's disease, and was not deposed.

4

brought suit in the District Court, filing a two-count complaint on January 28, 2011 and alleging ADA discrimination (Count I) and retaliation (Count II).[3] The City filed its motion for summary judgment on March 16, 2012, which the District Court granted in an Order dated May 2, 2012, and Memorandum Opinion dated May 10, 2012. Diaz filed a motion for reconsideration, which was also denied in a Memorandum Opinion and Order dated June 25, 2013. This timely appeal followed on June 28, 2013.[4]

II.

We exercise *de novo* review over a grant of summary judgment and apply the same standard as the District Court. *Pichler v. UNITE*, 542 F.3d 380, 385 (3d Cir. 2008) (citing *Marten v. Godwin*, 499 F.3d 290, 295 (3d Cir. 2007)). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted). Courts must view the facts and make inferences in the light most favorable to the

---

[3] Count II is not at issue on appeal, as Diaz stipulated to its dismissal at the summary judgment stage. *See Diaz v. City of Phila.*, No. 11-671, 2012 WL 1657866, *1 n.2 (E.D. Pa. May 10, 2012).

[4] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331 and we have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

nonmoving party, and may not resolve factual disputes or make credibility determinations. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## III.

### A.

To establish a *prima facie* case of discrimination under the ADA, Diaz must show that "'(1) [she] is a disabled person within the meaning of the ADA; (2) [she] is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) [she] has suffered an otherwise adverse employment decision as a result of discrimination.'" *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999) (quoting *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998)). Both parties agree that Diaz is "disabled" within the meaning of the ADA. Diaz challenges the District Court's holdings with respect to the second two prongs, but we need only address the latter.

### B.

Diaz argues that she suffered an adverse employment decision for three reasons. First, she claims to have been denied a reasonable accommodation for her disability; second, she claims to have suffered disparate treatment because her mental disability prevented her from qualifying for IOD status and benefits; and third, she claims that the

6

City's proffered reasons for placing her on no duty status were pretextual. We will address each argument in turn.

1.

Diaz's reasonable accommodation argument fails by her own admission. She concedes that "a reasonable accommodation may be provided by granting an employee an unpaid leave for a length of time sufficient to allow the employee to recover from a temporary disability . . . ." Appellant's Br. at 37 (citing *Criado v. IBM Corp.*, 145 F.3d 437, 443 (1st Cir. 1998)). The City granted Diaz's requests for both FMLA leave and an unpaid medical leave of absence to allow her to continue treatment for her PTSD. In light of the determination that Diaz was not injured while on duty,[5] we cannot conclude that such accommodation was unreasonable.

Diaz identifies several positions that she would have preferred over the accommodation she received. The ADA does not, however, require an employer to provide a disabled employee with the accommodation of her choosing. *Hankins v. The Gap, Inc.*, 84 F.3d 797, 800-01 (6th Cir. 1996) ("an employee cannot make his employer

---

[5] We agree with the District Court that much of Diaz's argument is devoted to relitigating the connection between her sexual harassment claims against Sergeant Davis and her PTSD by attacking the City's denial of her IOD claim (which precluded her from receiving HLA benefits). *See* App. at 35 n.32. Diaz already litigated the IOD issue before the City's Civil Service Commission and the Court of Common Pleas of Philadelphia County, and both bodies rejected her arguments. App. at 148-49. We decline to disturb those rulings. *See Jones v. United Parcel Serv.*, 214 F.3d 402, 406 (3d Cir. 2000) (giving preclusive effect to state courts' factual determinations in a federal ADA case).

provide a specific accommodation if another reasonable accommodation is instead provided" (citing *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68-69 (1986)); *Miranda v. Wis. Power & Light Co.*, 91 F.3d 1011, 1016 (7th Cir. 1996) ("The ADA does not obligate an employer to provide a disabled employee every accommodation on his wish list."). Although Diaz requested assignment in the CCTV Unit, such accommodation was not necessarily reasonable in light of the dependability issues and conflict with a coworker she had while previously working in that unit. Moreover, we agree with the District Court's assessment that the City reasonably determined that a patrol officer's mental health issues must be resolved before he or she can return to active duty. *See* App. at 31-34. In light of the record before us,[6] we conclude that Diaz was provided with a reasonable accommodation in this case.

2.

Diaz premises her disparate treatment argument on the ground that Philadelphia police officers with mental injuries (such as PTSD) are treated differently than those with

---

[6] We acknowledge that Diaz challenges the procedures the MEU followed with respect to her mental health evaluation with Dr. Arce. Nevertheless, Dr. Hayes provided a reasoned basis for the no-duty determination based upon Dr. Beckwith's interview, which revealed that Diaz had been diagnosed with PTSD and that her medication prevented her from working as a patrol officer. App. at 240-41 ("We are not a treating facility so we don't make diagnoses. We are an evaluating facility. So what we're doing is assessing the history essentially of what the patient has given. . . . And the patient states clearly . . . that she had [PTSD], was on medications that did not allow her to be able to work, and for that reason Beckwith could not have put her back to any duty other than no duty."). We cannot conclude, on these facts, that the City failed to "make a good-faith effort to seek accommodations." *Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 187 (3d Cir. 2009).

physical injuries. She offers no caselaw to support this premise, and we rejected a similar argument in *Ford v. Schering-Plough Corp.*, 145 F.3d 601, 608 (3d Cir. 1998). In *Ford*, we held that "[t]he ADA does not require equal coverage for every type of disability . . . ." *Id.* That case addressed the question of whether a company's health insurance plan violated the ADA where the plan treated employees with mental disabilities differently from those with physical disabilities. *Id.* at 603-04. In arriving at our conclusion, we noted that "[s]o long as every employee is offered the same plan regardless of that employee's contemporary or future disability status, then no discrimination has occurred even if the plan offers different coverage for various disabilities." *Id.* at 608.

In this case, only officers who are injured on duty are eligible for HLA benefits. *See* 53 Pa. Stat. Ann. § 637 ("[A]ny policeman . . . of any . . . city . . . who is injured *in the performance of his duties* . . . shall be paid . . . his full rate of salary, as fixed by ordinance or resolution, until the disability arising therefrom has ceased." (emphasis added)). Those officers who are not given IOD status are evaluated at the MEU. That evaluation may result in differing duty assignments depending on the type of injury, but the fact remains that officers are given the opportunity to be evaluated. To the extent that a different duty assignment is a "benefit" enjoyed by some officers but not others, our precedents do not preclude such a result. *Ford*, 145 F.3d at 608. Diaz's other argument, that she was denied benefits under the HLA, is yet another attempt to relitigate her IOD status—an argument we have already rejected. *See supra* note 5.

9

3.

Finally, we note that Diaz fails to establish pretext. There is no dispute that she was eligible to renew her leave of absence for a second six-month period. Her failure to do so was the basis for her termination. Diaz points to no evidence (direct or circumstantial) from which a factfinder could reasonably either: "(1) disbelieve [the City's] articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of [the City's] action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). Diaz attacks the City's proffered reasons for why it places officers with mental injuries in "no duty" status, but her arguments are speculative and unsupported by any legal authority.

The City's first proffered reason is that "no duty" status allows officers with mental injuries to seek treatment. Diaz argues that the City's reasoning is pretextual because it would not pay for such treatment. Again, this is an attempt to relitigate Diaz's IOD status (to the extent that only HLA benefits would pay for the treatment) and is unavailing. The City's second proffered reason is that "no duty" status furthers the safe and efficient operations of the department. This is supported by record evidence insofar as Dr. Hayes indicated that officers with psychological injuries often developed job-related physical injuries if they were placed on restricted duty. Diaz also indicated that work in the CCTV Unit involved in-person interaction with potentially dangerous individuals, including "intake of prisoners, making sure they saw the judge on the circuit

10

TV . . . feeding them, [and] fingerprinting." App. at 144. Given this interaction, the City reasonably required officers performing such duties to be mentally fit for duty. Neither of these grounds is so weak or implausible as to undermine the City's proffered basis for terminating Diaz, and we therefore conclude that she fails to demonstrate evidence of pretext. *See Fuentes*, 32 F.3d at 764-65.

C.

Diaz argues that the District Court erred by denying her motion for reconsideration because its summary judgment opinion contained "numerous factual errors and improper inferences and determinations." Appellant's Br. at 49. We see no merit in her argument. We find no clear error in the District Court's factual findings and, as detailed above, find no improper determinations in its conclusions of law. As such, the District Court did not abuse its discretion by denying Diaz's motion. *See Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 673 (3d Cir. 1999).

IV.

For the above-stated reasons, we will affirm the District Court's judgment in favor of the City.