USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 97-1963 FRANKLIN RALPH, Plaintiff - Appellee, v. LUCENT TECHNOLOGIES, INC., Defendant - Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Nancy J. Gertner, U.S. District Judge] ___________________ ____________________ Before Bownes and Cyr, Senior Circuit Judges, _____________________ and Skinner,* Senior District Judge. _____________________ _____________________ Thomas E. Shirley, with whom Elizabeth M. McCarron and ___________________ _______________________ Choate, Hall & Stewart were on brief for appellant. ______________________ Marjory D. Robertson, with whom Curley & Curley, P.C. was on ____________________ _____________________ brief for appellee. ____________________ February 2, 1998 ____________________  ____________________ * Of the District of Massachusetts, sitting by designation. SKINNER, Senior District Judge. The plaintiff SKINNER, Senior District Judge. ________________________ originally brought this action against his former employer, Lucent Technologies, Inc. (Lucent), in the Superior Court for Essex County, Massachusetts, in aid of a pending claim before the Massachusetts Commission Against Discrimination (MCAD). The relief sought by the terms of the complaint was a temporary injunction (1) permitting him to return to work with a "reasonable accommodation" for his disability and (2) requiring Lucent to toll the 90-day deadline for applying for various benefits. The plaintiff relies on Massachusetts General Laws, ch. 151B, 9 and the Americans With Disabilities Act, 42 U.S.C. 12111 et seq. The defendant removed the case to the United _______ States District Court, alleging a federal question and diversity of citizenship. The plaintiff is a resident of New Hampshire and Lucent is a Delaware corporation having a regular place of business in Massachusetts. The district court made findings of likelihood of success on the merits, irreparable harm and absence of hardship to the defendant. It entered a preliminary injunction requiring Lucent to allow the plaintiff to return to part-time work for a "provisional" period of four weeks and tolling the period for applying for various benefits for the same period. So much of the order as required Lucent to allow the plaintiff to work part- time was stayed pending appeal. This appeal followed. -2- The district court had original federal question jurisdiction of this action, and this court has appellate jurisdiction. 28 U.S.C. 1331, 1441 and 1292(a)(1). STANDARDS OF REVIEW STANDARDS OF REVIEW We have extensively addressed the criteria for the issuance of a preliminary injunction and the scope of appellate review in a long series of cases, e.g.: In the typical case, a party seeking preliminary injunctive relief must prove: (1) a substantial likelihood of success on the merits; (2) a significant risk of irreparable harm if the injunction is withheld; (3) a favorable balance of hardships; (4) a fit (or at least, a lack of friction) between the injunction and the public interest. . . . We review the district court's grant of a preliminary injunction for a mistake of law or abuse of discretion. Equal Employment Opportunity Comm'n v. Astra USA, Inc., 94 F.3d ___________________________________ ______________ 738, 743 (1st Cir. 1996) (citations omitted). In its brief, Lucent identifies the plaintiff's likelihood of success and his risk of irreparable injury as the two issues presented for review. The other two criteria, balance of hardship and the public interest, therefore, are not issues in this appeal. BACKGROUND BACKGROUND The following summary of the evidence is taken from the verified complaint, the verified complaint before the MCAD and various affidavits submitted to the district court. While the underlying claim is not at issue in this appeal, we consider these allegations as relevant background to our resolution of -3- this appeal. We take the evidence in the light most favorable to the plaintiff-appellee. The plaintiff was employed by Lucent and its predecessor entities for twenty-four years. He was a "Composite Master Tradesworker," i.e., an expert carpenter, assigned to Lucent's Merrimack Valley facility in North Andover, Massachusetts, and he was represented by a local of the Communications Workers of America union under a collective bargaining agreement. He was eligible for 52 weeks of disability leave at full pay under his employer's "Sickness and Accident Disability Benefit Plan."  In April of 1996, plaintiff had a mental breakdown and went on paid disability leave. He had been able to attend work only briefly in June and July of 1997. Plaintiff attributes his disability to sexual harassment by other Lucent employees. According to a complaint he filed with the MCAD in September of 1996, the plaintiff had been subjected to sexual harassment by his male co-workers and his male supervisor for five to six years. He identified six harassers by name. The co- workers made the plaintiff the butt of crude and derisive jokes about being a homosexual and a child molester. The plaintiff is neither a homosexual nor a child molester. The harassment included offensive touching by his supervisor and others. At one point, the name "Tookie" was inscribed on the plaintiff's locker. This graffiti was a reference to Tookie Amirault, a man convicted of child molestation in a highly -4- publicized case. The plaintiff's co-workers called him by this name. The plaintiff's supervisor did not act on the plaintiff's requests for redress, and even participated in the harassment. According to the MCAD complaint, the last instance of harassment occurred on April 9, 1996. The plaintiff discovered that someone had placed on his truck a picture of a man in his underwear. He brought the photo to his supervisor, said that he could not take it anymore, and went home. Thereafter, the plaintiff made attempts on his own life and was hospitalized several times. In July of 1996, the plaintiff consulted Dr. Jack Danielian, a psychologist. He was diagnosed with major depression and post-traumatic stress disorder. In late October or November of 1996, he consulted with Rowen Hochstedler, a psychiatrist at a Newburyport hospital. Dr. Hochstedler prescribed medication, but discontinued it in early 1997, because the plaintiff functioned well without it, and it was likely to do more harm than good. Lucent notified the plaintiff in March of 1997 that his disability benefits would expire on May 27, 1997. He sought and obtained from Dr. Danielian and Dr. Hochstedler medical clearance to return to work in April. Dr. Morin, a psychiatrist hired by Lucent, recommended that he be kept away from his alleged harassers upon his return. Dr. Waugh, a general practice physician who serves as Medical Director at Lucent's Merrimack Valley facility finally authorized the plaintiff's return to work on May 23, 1997. -5- Consistent with the plaintiff's wishes and Dr. Morin's recommendation, he was assigned to a new work site with a new supervisor named Robert Bartley. The plaintiff was to work five days a week, 6:30 a. m. to 3:00 p. m. His first day, May 23, was the Friday before Memorial Day weekend. He completed the day without incident. A human resources officer for Lucent named Sheila Landers met with the plaintiff that day and ordered him to stay away from his former co-workers. The next workday was Tuesday, May 27. Ms. Landers met with the plaintiff's former co-workers and told them to stay away from him. No disciplinary action was imposed for their conduct. That morning, the plaintiff returned to his former locker at his old work site and found the words "Tooky's Toys" (or "Tookie's Toys") inscribed in the locker. According to his affidavit, this inscription was probably present before his disability leave, but it was different from the inscription "Tookie" on the outside of his locker which was referred to in his MCAD complaint and which he says he had removed himself. The plaintiff was upset by the inscription to such a degree that he could not continue with work. He reported to Lucent's medical department, saw Dr. Waugh, and was sent home at 8:10 a. m. The plaintiff returned to work the next day, Wednesday, May 28. He met with Dr. Waugh and they agreed to meet weekly to monitor his progress. The plaintiff worked the remainder of the -6- week. He used some of his paid personal time to leave two hours early on Friday, May 30. He worked a full day on the following Monday, June 2. On the morning of Tuesday, June 3, the plaintiff became emotionally distraught and went home with the consent of his supervisor at about 8:30 a. m. Without giving any names, the plaintiff ascribed his distress to people giving him dirty looks. By a subsequent affidavit he explained that the wife of one of the men he accused of harassment had given him hostile looks and two male employees appeared to be smirking at him and laughing. As he departed, the plaintiff had some conversation with his supervisor in which the possibility of a temporary part- time schedule was discussed. Bartley suggested he use vacation time to fill in a part-time schedule until he got used to being back at work. The plaintiff remained home the following day, Wednesday, June 4. He expressed a desire to return to work. Dr. Danielian, the psychologist treating the plaintiff, spoke to Dr. Waugh on the telephone. They agreed that the plaintiff should see Dr. Hochstedler. Later that day, Bartley spoke to Dr. Waugh and an employee of Lucent's benefits department named Lina McLaughlin. Dr. Waugh said he would need input from the plaintiff's treating physicians in order to authorize the plaintiff's return to work. Mr. Bartley and Lina McLaughlin then telephoned the plaintiff and told him he would need Dr. Waugh's clearance to -7- return to work, else he would be removed from the payroll because he had run out of disability benefits. On Thursday, June 5, the plaintiff reported for work. Dr. Waugh refused to authorize his return. Mr. Bartley and Ms. McLaughlin then met with him and told him he had three options: (i) apply for a disability pension pursuant to the pension plan; (ii) apply for disability payments under the long-term disability plan; or (iii) take an additional unpaid disability leave for up to six months to allow for the possibility of a recovery permitting a return to work. Later that day, the plaintiff's counsel called Dr. Danielian and informed him of the ultimatum put to the plaintiff. Dr. Danielian called Dr. Waugh. Dr. Danielian reports by affidavit that Dr. Waugh disclaimed responsibility for the decision to turn the plaintiff away. On Monday, June 9, plaintiff's counsel made a demand to Lucent that the plaintiff be afforded the accommodation of a temporary return to work part- time. At this point the record reveals a series of letters and affidavits from the plaintiff's treating therapists, Dr. Danielian (psychologist) and Dr. Hochstedler (psychiatrist), the gist of which may be summarized as follows: 1. The plaintiff is fit to go to work, part-time at the outset, with the likelihood of full-time work as he adjusts -8- to the return to the workplace. A trial period of part-time work would be a reasonable accommodation to his disability. 2. The plaintiff is likely to function better without medication. 3. Facing up to the reality of returning to Lucent is a critical factor in curing the plaintiff's depression, although it is likely that his progress would be uneven. 4. Delay in return to work will tend to exacerbate his condition.1 A psychiatrist, hired by Lucent, and Lucent's medical director ultimately expressed contrary views, and the plaintiff was not permitted to return to part-time work. The plaintiff's therapists were qualified in their respective fields, and the district judge, as finder of fact, was entitled to accept their opinions, which she did. DISCUSSION DISCUSSION A. Likelihood of Success on the Merits ___________________________________ "The likelihood of success on the merits is a predicate to the issuance of a preliminary injunction." American Auto. ______________ Mfrs. Ass'n v. Commissoner, Mass. Dep't of Envtl. Protection, 31 ___________ ______________________________________________ F.3d 18, 28 (1st Cir. 1994). The merits to be considered are the merits of Ralph's underlying ADA and state-law disability-  ____________________ 1 The defendant's contention at oral argument that the therapists meant work anywhere is contradicted by this record. In any case, it would hardly be considered therapeutic to send the plaintiff on a search for another job after 24 years at Lucent. Employment discrimination is not appropriately corrected by removing the victim. -9- discrimination claims, which turn primarily on whether Lucent has afforded Ralph's disability all "reasonable accommodation;" and whether Ralph is entitled to injunctive relief to preserve the status quo pending the resolution of his original MCAD complaint.2 A preliminary injunction to prevent irreparable injury during the pendency of a complaint before the MCAD is authorized by Mass. Gen. Laws ch. 151B, 9. Accommodation of a disability by providing for part-time work is authorized by the Americans With Disabilities Act, 42 U.S.C. 12111(9)(B), and by the E.E.O.C. guideline, Enforcement Guidance: The Americans With _________________________________________ Disabilities and Psychiatric Disabilities, 23 (1997) cited by the _________________________________________ district judge. See Morgan v. Massachusetts Gen. Hosp., 901 F.2d ___ ______ ________________________ 186, 192 (1st Cir. 1990). The district court was warranted in finding a likelihood of success on the merits of this limited complaint. B. Likelihood of Irreparable Harm ______________________________ "Though mistake of law is a rubric that requires no elaboration, abuse of discretion is a fuzzier concept. That inquiry is case- specific, see Weaver [v. Henderson], 984 F.2d ______ _________ [11] at 13 [(1st. Cir. 1993)]; Narragansett ____________ Indian Tribe [v. Gilbert], 934 F.2d [4] at 5- ____________ _______ 6 [(1st. Cir. 1991)], and a finding of abuse usually entails proof that the nisi prius court, in making the challenged ruling, ignored pertinent elements deserving  ____________________ 2 Success on the merits of the underlying claim for same-sex sexual harassment may be likely as well. Morgan v. Massachusetts ______ _____________ Gen. Hosp., 901 F.2d 186 (1st Cir. 1990); Doe by Doe v. City of __________ __________ ________ Bellville, Ill., 119 F.3d 563, 570 (7th Cir. 1997). The contrary _______________ conclusion by the Fifth Circuit is presently before the Supreme Court. Oncale v. Sundowner Offshore Servs., Inc., 83 F.3d 118 ______ ________________________________ (5th Cir. 1996). The matter is not before us, however, and we venture no opinion. -10- significant weight, considered improper criteria, or, though assessing all appropriate and no inappropriate factors, plainly erred in balancing them. See [Independent Oil and Chem. Workers of Quincy, ____________________________________________ Inc. v.] Proctor & Gamble Mfg. Co., 864 F.2d ___ _________________________ [921] at 929 [(1st Cir. 1988)]." Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 16 _____________________________ ______________ (1st Cir. 1996). A federal court must find a cognizable threat of irreparable harm as an essential prerequisite to the issuance of a preliminary injunction. Id. 102 F.3d at 19. ___ The district judge made the following finding: "I also find that Ralph has demonstrated irreparable harm. Though losses occasioned by employment disputes often do not rise to the level of irreparable harm, Ralph's case is different for two reasons. First, the harassment Ralph suffered at Lucent played a significant role in his breakdown. Medical evidence suggests that returning to work is essential to his recovery. Second, Ralph's disability will worsen the longer he is out of work. These circumstances distinguish Ralph's case from the standard discrimination lawsuit." We agree. C. Preemption __________ The defendant's first preemption argument is that the plaintiff's claim is preempted by the collective bargaining agreement between the plaintiff's union and Lucent which, among other things, provides a grievance and arbitration procedure. Labor Management Act, 301, 29 U.S.C. 185. This argument fails, however, because the present controversy concerns the plaintiff's rights under state and federal statutes which exist -11- independently of the collective bargaining agreement and do not require interpretation of that agreement. Livadas v. Bradshaw, _______ ________ 512 U.S. 107, 123-124 (1994); Hawaiian Airlines v. Norris, 512 __________________ ______ U.S. 246, 261 (1994). The cases cited by the defendant are inapposite. In Martin v. Shaw's Supermarkets, Inc., 105 F.3d 40 (1st Cir. 1997), ______ _________________________ provisos in the State Workers' Compensation statute itself gave precedence to conflicting provisions of a collective bargaining agreement. We note: "It is doubtful whether without the last quoted proviso, [defendant] would have any plausible claim of federal preemption. Massachusetts has an independent interest in regulating injury compensation and apart from the proviso the elements of both [of the plaintiff's] state-law claims appear to be independent of bargaining agreement provisions."  Id. at 41. __ In Reese v. Houston Lighting & Power Co., 79 F.3d 485, _____ _____________________________ 487 (5th Cir. 1996), the court upheld a finding of preemption because the litigated issues were specifically covered in the collective bargaining agreement, e. g., promotion, seniority, and assignment to training programs. The rights alleged here are independent, nonnegotiable rights founded not only in a state statute, but in a federal statute, the Americans With Disabilities Act. We hold that these rights are not to be preempted by the collective bargaining agreement. -12- Secondly, the defendant asserts preemption by the Employment Retirement Income Security Act (ERISA), 29 U.S.C. 1144(A). In Boston Children's Heart Found., Inc. v. Nadal- _______________________________________ ______ Ginard, 73 F.3d 429, 439-40 (1st Cir. 1996), we stated: ______ State laws that have merely a "tenuous, remote, or peripheral connection with a covered benefit plan" may not be preempted by ERISA. . . . . Such is normally the case with respect to laws of general applicability. . . . A court cannot conclude that a state law is one of general applicability, and as such is not preempted by ERISA, based on the form or label of the law, however. Absent precedent on a closely related problem, the inquiry into whether a state law "relates to" an ERISA plan or is merely "tenuous, remote, or peripheral" requires a court to look at the facts of [a] particular case. See also Rozzell v. Security Servs., Inc., 38 F.3d 819 (5th Cir. ________ _______ ______________________ 1994); Angone v. 990 Lake Shore Drive Home Owners Ass'n, 866 ______ _________________________________________ F. Supp. 377, 380 (N.D. Ill. 1994). In this case, the only impact on Lucent's ERISA plan is the extension of time to make application for certain benefits. No variation in the terms of benefits or their application is implicated. The Seventh Circuit has held that the time limits under an ERISA plan are subject to equitable tolling. Doe v. Blue Cross & Blue Shield United of ___ ____________________________________ Wis., 112 F.3d 869, 875-878 (7th Cir. 1997), and the extension of ____ time in this case "does not raise the core concern underlying ERISA preemption." Nadal-Ginard, 73 F.3d at 440. ____________ Moreover, there is no authority for the proposition that ERISA preempts rights under a federal statute. In this _______ case, the very minor impingement on the defendant's ERISA plan is -13- in aid of a reasonable accommodation under the Americans With Disabilities Act. We hold that there is no preemption by ERISA. -14- D. Reasonable Accommodation ________________________ The defendant argues that it has already made a reasonable accommodation to the plaintiff's disability by giving him 52 weeks of leave with pay, plus changing his work assignment and supervisor. The duty to provide reasonable accommodation is a continuing one, however, and not exhausted by one effort. Bultemeyer v. Fort Wayne Community Sch., 100 F.3d 1281, 1285 (7th __________ _________________________ Cir. 1996). The very limited four-week accommodation ordered by the district court strikes us as eminently reasonable; so reasonable, in fact, that we are puzzled that Lucent has drawn a line in the sand at this point. In colloquy with counsel, the district judge made it clear that if the plaintiff failed this four-week test, that was the end of the matter. We hold that the accommodation ordered by the court was reasonable and in accord with the Americans With Disabilities Act. CONCLUSION CONCLUSION We do not perceive either a mistake of law or an abuse of discretion. Accordingly, we affirm the order of the district affirm ______ court. Costs of the appeal shall be assessed against the defendant-appellant. -15-