<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                 United States Court of Appeals
                     For the First Circuit
                      ____________________

No. 97-1341

                       ELIZABETH CRIADO,

                     Plaintiff - Appellant,

                               v.

                        IBM CORPORATION,

                     Defendant - Appellee.

                      ____________________

No. 97-1342

                        IBM CORPORATION,

                     Plaintiff - Appellant,

                               v.

                       ELIZABETH CRIADO,

                     Defendant - Appellee.

                      ____________________

         APPEALS FROM THE UNITED STATES DISTRICT COURT

                FOR THE DISTRICT OF PUERTO RICO

         [Hon. Jos Antonio Fust, U.S. District Judge]

                      ____________________

                             Before

                     Stahl, Circuit Judge,

Godbold and Cyr, Senior Circuit Judges.

                     _____________________

   Jeffrey G. Huvelle, with whom Michael A. Dawson, Covington &
Burling, Alfredo M. Hopgood and McConnell Valds were on brief for
appellant IBM Corporation.
   Enrique J. Mendoza-Mndez, with whom Mendoza & Bac was on
brief for appellee Elizabeth Criado.

                      ____________________

                         June 5, 1998
                      ____________________

         GODBOLD, Senior Circuit Judge.  The defendant IBM
Corporation appeals from a final judgment in favor of plaintiff
Elizabeth Criado on her claim that her employment with IBM was
terminated in violation of the Americans with Disabilities Act
(ADA), 42 U.S.C.  12112, and the Puerto Rico Indemnity Law, 29
L.P.R.A.  185a-d.  IBM questions the sufficiency of the evidence
in numerous respects.  By cross-appeal Criado questions elements of
the damage award in her favor.
               I.  Factual and Procedural History
    The jury was entitled to find the following facts, either
as undisputed or based on sufficient evidence.
    Elizabeth Criado relocated to Puerto Rico from New York
in 1987 to assume a full-time position in IBM's marketing
department.  From 1987 to 1993 she performed her job very well,
often receiving commendations and recognition for surpassing
marketing and sales goals.  During this period Criado was under the
care of a psychiatrist, Dr. Michael Woodbury, who diagnosed her
with Attention Deficit Disorder and treated her for an anxiety
disorder and bouts of depression.  Although the bouts of depression
often required temporary medication, none was so severe that it
required Criado to take a leave of absence.
    In 1994 Criado's mental impairment worsened as the result
of both personal and professional stressors.  She was married in
January of 1994.  Her new husband had five children from a previous
marriage, some of whom resided with Criado and her husband.  In May
a new manager, Kathy Lee, replaced Criado's former supervisor.  
Lee's managerial style was more formal and rigid than Criado's
previous supervisors, and Criado considered her inept.  All of
these factors caused Criado's condition to degenerate rapidly.
    By June of 1994 Criado's anxiety disorder and depression
had worsened to the point that she began to request accommodations
for her condition.  Dr. Woodbury, her doctor, suggested that she
take a disability leave so that he could treat her condition, give
her time to recuperate, and experiment with possible medication if
needed.  He thought that if Criado were granted a one-month leave
he could ameliorate her condition to the point that she could
return to work and once again be a productive employee despite her
illness.  Following IBM's procedure he requested  a disability
leave for Criado to begin June 22, but it was not until mid-July
that the leave was granted.  IBM's medical department only granted
leave through August 1 because that was the date originally
requested by Dr. Woodbury.
     Criado was not well enough to return to work in August,
and Dr. Woodbury tried to convey this information by fax to IBM's
medical unit in New York, by sending evaluations dated August 4 and
12.  The parties dispute whether IBM received the August 12 fax,
although evidence showed that Woodbury's office made a one-minute
telephone call to IBM's medical department fax number on August 12,
indicating that a fax was transmitted.  Woodbury tried to make sure
that all communication concerning Criado was between himself and
IBM, because he thought that Criado's treatment depended on her
isolation from IBM affairs.  However, supervisor Lee continued to
contact Criado directly, and on August 17 she informed Criado that
her leave of absence had not been extended past August 1, and,
because she had failed to return to work, her employment with IBM
had been terminated.  Subsequent to this termination letter,
Dr. Woodbury wrote IBM asking that it reconsider Criado's
termination.  He attached his evaluations dated August 4 and
August 12.  He continued to say that Criado's condition would
improve enough for her to return to work if she were given more
time away from IBM.  He also informed IBM that the termination
letter had worsened Criado's condition.
    IBM describes Criado's termination as a misunderstanding
of the fact that she, through the doctor, was seeking additional
leave time after the three-week leave expired, which arguably
related to Dr. Woodbury's efforts to pass information by fax to
IBM's medical department in New York.  But, assuming the faxes did
not reach the medical department, it is undisputed that
Dr. Woodbury by subsequent letter sent information on Criado's
condition and requested reconsideration of her termination.  IBM
refused to reconsider Criado's termination, and on August 28, 1995,
she filed suit against IBM alleging that it had discharged her in
violation of the ADA and the Puerto Rico Indemnity Law.
    A jury returned a verdict in favor of Criado on her
federal and state claims, and awarded her $200,000 in compensatory
damages, $209,139 for back pay, $46,384 for front pay, and $250,000
in punitive damages.  The $450,000 in compensatory and punitive
damages were reduced to $300,000 pursuant to a statutory damages
cap found at 42 U.S.C.  1981(b)(3)(D).  The court did not award
prejudgment interest or order IBM to reinstate Criado.  After the
parties filed a series of post-trial motions the district court
decided to reconsider the issue of reinstatement and held an
evidentiary hearing to determine whether it had erred in failing to
order IBM to reinstate Criado.  After this hearing the court
determined that Criado's position had been eliminated in 1995 so
that reinstatement was not warranted.  The court further found that
it would not order Criado's reinstatement to an alternate position
because of her past antagonistic relationship with supervisors.  
Also, the court denied Criado's motion asking for an award of pre-
judgment interest.
    Each party filed a timely notice of appeal from the
judgment, and the appeals were consolidated.  We affirm in part,
reverse in part, and remand to the district court for further
proceedings.
                       II.  IBM's APPEAL
               A.  Issues and standards of review
    At times IBM presents its issues as though purely turning
on questions of law, but the central issue involves sufficiency of
the evidence as raised by a Rule 50(b) motion.  IBM asserts that
Criado did not present sufficient evidence (1) that she has a
disability; (2) that she was a qualified individual; (3) that the
accommodation she requested was reasonable; and (4) that her
employment was terminated because of a disability.
    When examining denial of a motion for a judgment as a
matter of law under Rule 50(b) we review de novo the sufficiency of
the evidence.  However, we employ the same determinative standards
utilized by the district court.  We cannot evaluate "the
credibility of witnesses, resolve conflicts in testimony, or
evaluate the weight of evidence," and we must affirm unless "the
evidence, viewed from the perspective most favorable to the
nonmovant, is so one-sided that the movant is plainly entitled to
judgment, for reasonable minds could not differ as to the outcome."
Gibson v. City of Cranston, 37 F.3d 731, 735 (1st Cir. 1994)
(citations omitted).
    IBM questions the damages awarded to Criado, including
the awards of front and back pay and the assessment of punitive
damages.  Deciding whether to uphold a jury's award of damages is
within the district court's discretion, and we will not disturb
this discretion unless we find "strong evidence of a lapse in
judgment."  Selgas v. American Airlines, Inc., 104 F.3d 9, 12 (1st
Cir. 1997); see also Fishman v. Clancy, 763 F.2d 485, 489-90 (1st
Cir. 1985) (juries have wide discretion in determining the amount
of punitive damages, and the trial court has broad discretion to
affirm the jury's award of damages).
               B.  Criado's burden under the ADA
    The ADA provides that "[n]o covered entity shall
discriminate against a qualified individual with a disability
because of the disability. . . ."  42 U.S.C.  12112(a).  To
prevail on an unlawful discrimination claim under the ADA a
plaintiff must prove three things by a preponderance of the
evidence: first, she must show that she was disabled within the
meaning of the Act; second, she must prove that with or without
reasonable accommodation she was a qualified individual able to
perform the essential functions of the job; and third, she must
show that the employer discharged her because of her disability.  
Jacques v. Clean-Up Group, Inc., 96 F.3d 506, 511 (1st Cir. 1996).
    Under the ADA, the term "discriminate" embodies "not
making reasonable accommodations to the known physical or mental
limitations of an otherwise qualified individual with a disability
. . . unless such covered entity can demonstrate that the
accommodation would impose an undue hardship on the operation of
the business of such covered entity."  42 U.S.C.  12112(b)(5)(A).  
The ADA defines "qualified individual with a disability" as "an
individual with a disability who, with or without reasonable
accommodation, can perform the essential functions of the
employment position that such individual holds or desires."  Id. 12111(8).  The Act recognizes that a reasonable accommodation may
include "job restructuring, part-time or modified work schedules,"
and other similar accommodations.  Id.  12111(9)(B).
                   C.  Criado's disability
    IBM contends that the court should have granted its
motion for judgment as a matter of law because Criado's impairment
is not a disability as defined by the ADA.  The ADA defines
disability as:
    (A)  a physical or mental impairment that substantially
         limits one or more of the major life activities of
         such individual;
    (B)  a record of such an impairment; or
    (C)  being regarded as having such an impairment.

42 U.S.C.  12102(2).  EEOC guidelines identify several factors to
assist in determining whether a particular "disability" is of such
severity that it comes within the protection intended by ADA.  
These factors include:
   (i)    The nature and severity of the impairment;
   (ii)   The duration or expected duration of the
          impairment; and
   (iii)  The permanent or long term impact, or the
          expected permanent or long term impact of or
          resulting from the impairment.

29 C.F.R.  1630.2(j)(2).  IBM views Criado's adjustment disorder
as a temporary mental condition that could not qualify as a
disability under the ADA.  Examining the evidence under the
standard required for review of a Rule 50 motion, we hold that
Criado presented evidence that could have allowed a rational jury
to determine that her disability was not temporary.  She had been
seeing her physician for seven years and had often had periods of
depression, though the particular episode is the only one that
required absence from work.  Furthermore, she had been diagnosed
with Attention Deficit Disorder (ADD), a permanent disability, and
her physician testified that the ADD compounded her depression and
anxiety disorders.
   IBM points to evidence from Criado's physician that her
condition was temporary and that she would completely recover after
a short leave from work.  But the jury could have found that Criado
and her physician only intended that the accommodation she
requested was temporary, not the disability itself.  
   Criado also presented evidence that allowed the jury to
find that her mental disorders had substantially impaired the major
life activity of working.  This court has recognized that in some
circumstances depression can constitute a disability under the ADA.  
See Ralph v. Lucent Techs., 135 F.3d 166, 168 (1st Cir. 1997)
(assuming that plaintiff's depression constituted a disability
under the ADA for the purpose of determining whether he had a
probability of success on the merits of his claim and thus deserved
injunctive relief); E.E.O.C. v. Amego, Inc., 110 F.3d 135, 141 (1st  
Cir. 1997) (assuming for summary judgment purposes that plaintiff's
depression and post-traumatic stress disorder rendered him "a
disabled person within the meaning of the ADA").  But see Soileauv. Guilford of Maine, Inc., 105 F.3d 12, 15 (1st Cir. 1997)
(finding no disability because the plaintiff's episodic depression
did not substantially limit any major life activity).
   IBM questions whether Criado had a permanent disability,
because prior to May and June of 1994 none of her major life
activities was substantially impaired by her bouts with depression.  
Furthermore, her physician predicted she would be fully able to
perform her job after she returned from her requested leave.  But
by the time Criado requested the leave of absence she had become
unable to perform some of the functions of her job.  She was having
trouble dealing with stress and relating to both co-workers and
clients.  Depression and anxiety were causing sleep deprivation
which affected her timeliness and ability to report to work.  This
evidence showed that her mental impairments had substantially
limited her ability to work, sleep, and relate to others.  Overall,
there was evidence indicating that she was unable to adequately
perform her job as she had in the past.  That her depression had
been adequately treated through therapy in the past and was
expected to be adequately treated through therapy and medication in
the future does not establish that she does not have a disability.  
See Arnold v. United Parcel Serv., Inc., 136 F.3d 854, 859 (1st
Cir. 1998) ("Both the explicit language and the illustrative
examples included in the ADA's legislative history make it
abundantly clear that Congress intended the analysis of an
'impairment' and of the question whether it 'substantially limits
a major life activity' to be made on the basis of the underlying
(physical or mental) condition, without considering the
ameliorative effects of medication, prostheses, or other mitigating
measures.") (citing H.R. Rep. No. 101-485, pt. III, at 28 (1989),
reprinted in 1990 U.S.C.C.A.N. 445, 451; H.R. Rep. No. 101-485, pt.  
II, at 52 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 334; S. Rep.
No. 101-116, at 23 (1989)); Krocka v. Bransfield, 969 F. Supp.
1073, 1085 (N.D. Ill. 1997) (summary judgment for employer not
warranted where plaintiff's ability to function generally and to
interact with others   and therefore to work   were substantially
limited before he was treated for depression with Prozac and
therapy).
   Proving the elements of a mental disability will not be
as easy or as clear cut as cases of physical disability.  But,
though mental impairments create special problems under the ADA,
Congress chose to recognize these as disabilities under the Act.   
Cf. Arnold, 136 F.3d at 861 ("Conceptually, it seems more
consistent with Congress's broad remedial goals in enacting the
ADA, and it also makes more sense, to interpret the words
"individual with a disability" broadly, so the Act's coverage
protects more types of people against discrimination.").
   The evidence of Criado's disability was sufficient.
                    D.  Qualified individual
   There is no merit to IBM's argument that the evidence is
insufficient to entitle a jury to find that Criado is a qualified
individual who could perform the essential functions of her job.  
Whether a person is a qualified individual under the ADA is
comprised of two separate inquiries.  First, the person must
possess "the requisite skill, experience, education and other job-
related requirements" for the position, and second, must be able to
perform the essential functions of the position with or without
reasonable accommodation.  See 29 C.F.R.  1630.2(m) (EEOC
guidelines).  Criado undoubtedly meets the first qualification.  
Before her disorder worsened she had received numerous awards and
commendations for her superior work performance.  In considering
the second question we will assume for the purposes of this query
that the leave requested by Criado was a reasonable accommodation.  
Criado's physician testified that if given a significant leave she
could adjust to her situation and after he experimented with
medication she might return to her previous level of functionality.  
This evidence indicates that with a reasonable accommodation Criado
could perform the essential functions of her job.
   The evidence that Criado was qualified was sufficient.
                  E.  Reasonable accommodation
   IBM contends that, even assuming Criado was disabled and
qualified, it did not violate the ADA because the accommodation she
requested was not reasonable.  Reasonable accommodations under the
ADA can include "[j]ob restructuring;  part-time or modified work
schedules; [or] reassignment to a vacant position; . . . and other
similar accommodations for individuals with disabilities." 42
U.S.C.  12111(9)(B).  A leave of absence and leave extensions are
reasonable accommodations in some circumstances.  See Rodgers v. Lehman, 869 F.2d 253, 259 (4th Cir. 1989) (decided under section
501(b) of the Rehabilitation Act and finding leaves reasonable
accommodations for alcoholics); Kimbro v. Atlantic Richfield Co.,
889 F.2d 869, 878-79 (9th Cir. 1989) (interpreting an analogous
state statute); 29 C.F.R. pt. 32, App. A(b) (Department of Labor
regulations announcing that a reasonable accommodation may require
an employer "to grant liberal time off or leave without pay when
paid sick leave is exhausted and when the disability is of a nature
that it is likely to respond to treatment of hospitalization"); 29
C.F.R. pt. 1630, App.(EEOC interpretive guidance on the ADA stating
that a reasonable accommodation "could include permitting the use
of accrued paid leave or providing additional unpaid leave for
necessary treatment").  Whether the leave request is reasonable
turns on the facts of the case.  Compare Ralph, 135 F.3d at 172
(for the purpose of granting injunction, success on the merits was
likely because employer may be required to grant additional
accommodations beyond a 52-week leave with pay for employee who
suffered a mental breakdown) with Evans v. Federal Express Corp.,
133 F.3d 137, 140-41 (1st Cir. 1998) (employer not required to
grant an additional leave of absence for employee to receive
treatment for alcohol abuse where prior leave was granted for
employee to seek treatment for cocaine addiction).
   In Kimbro the Ninth Circuit recognized that an employee
who suffered from acute migraine episodes was justified in
requesting a temporary leave of absence as an accommodation for his
disability where the leave would have allowed his doctor to
formulate an effective treatment.  Kimbro, 889 F.2d at 879 ("As
long as a reasonable accommodation available to the employer could
have plausibly enabled a handicapped employee to adequately perform
his job, an employer is liable for failing to attempt that
accommodation.").
   Like the plaintiff in Kimbro, Criado offered evidence
tending to show that her leave would be temporary and would allow
her physician to design an effective treatment program.  
Furthermore, IBM provides all employees with 52 weeks of paid
disability leave.  In explaining this policy an IBM management
representative testified that disability leaves did not financially
burden IBM because it recognized that it was always more profitable
to allow an employee time to recover than to hire and train a new
employee.  This testimony prevents IBM from asserting that Criado's
leave produced an undue burden on its operations.  Also, Criado was
not asking for more leave than would be granted to a non-disabled,
sick employee.  Because Criado's physician was optimistic that the
leave would ameliorate her disability, the jury could find her
request a reasonable accommodation.  
    Considering the facts in the light most favorable to the
verdict we find no error in the district court's denial of IBM's
motion for a judgment as a matter of law on the issue of whether
Criado's leave request was a reasonable accommodation.
              F.  Reason for Criado's termination
    IBM asserts that it terminated Criado's employment
because of miscommunication between Dr. Woodbury and its New York
medical office, concerning her request for an extended leave period
and her failure to report to work, rather than because of her
disability or her need for an accommodation and, IBM says, since
liability under the ADA requires that an employer has discriminated
on the basis of the employee's disability, the district court
should have granted judgment as a matter of law in its favor.  
However, IBM's doctor acknowledged that the evaluations of August 4
and 12 would have supported Criado's request for additional leave.  
    Moreover, IBM's position ignores its duty to accommodate
under the ADA.  IBM was on notice that Criado was suffering from a
mental impairment and that she needed time to adjust to her
exacerbated condition.  "An employee's request for reasonable
accommodation requires a great deal of communication between the
employee and employer[;] . . . both parties bear responsibility for
determining what accommodation is necessary."  Bultemeyer v. Fort
Wayne Community Sch., 100 F.3d 1281, 1285 (7th Cir. 1996) (also
noting that "[i]n a case involving an employee with mental illness,
the communication process becomes more difficult," and "[i]t is
crucial that the employer [is] aware of the difficulties, and help
the other party determine what specific accommodations are
necessary") (internal quotations and citation omitted).  If the
termination was the result of a communication mistake Criado should
have been reinstated once her physician explained her condition and
prognosis and asked for additional leave.  See Bultmeyer, 100 F.3d
at 1286 (holding that although physician's letter requesting an
accommodation for disabled employee came after employer's decision
to terminate, employer should have "reconsider[ed] the decision to
terminate his employment").
    Asserting that the termination was based on Criado's
absenteeism rather than her disability does not justify IBM's
action where the absence was the requested accommodation.  Allowing
a disabled employee a one-month leave of absence does not absolve
an employer's duty to accommodate, especially where the extra leave
requested is not expected to be prolonged or perpetual.  See Ralph,
135 F.3d at 171-72 ("The defendant argues that it has already made
a reasonable accommodation to the plaintiff's disability by giving
him 52 weeks of leave with pay, plus changing his work assignment
and supervisor.  The duty to provide reasonable accommodation is a
continuing one, however, and not exhausted by one effort.").  
Considering these facts the jury could have found that IBM
terminated Criado because of her disability.
                          G.  Damages
                    (1) Back and front pay
    The district court's damages award included a back pay
award, a front pay award, a compensatory damage award, and a
punitive damage award.  We hold that the evidence presented, viewed
in the light most favorable to the verdict, properly supported the
awards of back pay and front pay.
    Specifically, IBM contends that, even if the verdict in
favor of Criado was proper, the amount of damages should be reduced
because Criado would have been terminated in March 1995 as a result
of an IBM reduction in force.  Therefore, IBM says, back pay should
have been limited to the period from August 1994, when Criado was
terminated, to March 1995, and that no award of front pay was
justified because reinstatement was impossible.  In considering
whether Criado's damages award was proper the district court made
findings of fact that supported the jury's awards.  "This court
sets aside such findings only if they are 'clearly erroneous.'"
Scarfo v. Cabletron Sys., Inc., 54 F.3d 931, 952 (1st Cir. 1995)
(quoting Fed. R. Civ. P. 52(a)).
    The district court agreed with IBM that reinstatement was
not a proper remedy for Criado for several reasons.  Initially it
found that Criado's position at IBM was eliminated in March of
1995.  However, the court did not make a conclusive finding on
whether Criado would have been hired for a different position in
another department at IBM had she not been previously terminated.  
Instead it found that even if she was qualified for another open
position at IBM it would not order reinstatement because of her
relationships with her past supervisors.  The court limited
Criado's front pay to a period of six months noting that at that
time Criado should return to the work force.  The district court
also found that "plaintiff has been made whole through awards of
front and back pay."   
    The district court's factual findings are not clearly
erroneous, and it did not abuse its discretion in awarding back pay
and a limited amount of front pay where the jury determined that
such a remedy was warranted by the facts.  See Selgas, 104 F.3d at
12 (A court's decision to uphold a jury's award of damages is
within the district court's discretion, and we will not disturb
this discretion unless we find "strong evidence of a lapse in
judgment.").
                     (2) Punitive damages
    This circuit has held that under federal law the evidence
of intent that is necessary to support a punitive damages award "is
the same [evidence of] 'intent' that is required for a finding of
discrimination in the first place."  Dichner v. Liberty Travel, ___
F.3d ___, 1998 WL 161137, *9 (1st Cir. 1998) (citing Rowlett v. Anheuser-Busch, Inc., 832 F.2d 194, 205 (1st Cir. 1987)
(recognizing that "the state of mind necessary to trigger liability
for the wrong is at least as culpable as that required to make
punitive damages applicable")).  Rowlett, relying on Smith v. Wade, 461 U.S. 30, 52-54 (1983), held that a finding of intentional
discrimination is sufficient to warrant punishment for a defendant
in order to deter future similar conduct if the jury exercising its
"discretionary moral judgment" so decides.  Rowlett, 832 F.2d at
205-06.
    The evidence in this case was sufficient to support a
finding of intentional discrimination; therefore, it was also
sufficient to support an award of punitive damages.  We cannot say
that the modified, combined punitive and compensatory damages award
of $300,000 is grossly excessive.  Accordingly, we affirm the
district court's award.
                  III.  Criado's Cross-Appeal
                     A.  Standard of Review
    In her cross-appeal Criado contends that the district
court erred by failing to award prejudgment interest and by
refusing to order her reinstatement.  Both of these decisions are
within the district court's discretion, and we review them only for
abuse of that discretion.  See Hogan v. Bangor & Aroostock R. Co.,
61 F.3d 1034, 1038 (1st Cir. 1995) (whether to award prejudgment
interest is within discretion of district court); Rosario-Torres v.
Hernndez-Coln, 889 F.2d 314, 320 (1st Cir. 1989)("[R]einstatement
is a remedy which lies within the discretion of the trial court.").
                    B.  Prejudgment interest
    The decision to award prejudgment interest is within the
discretion of the trial court.  Hogan, 61 F.3d at 1038.  The
district court found that the large award of damages to Criado made
her whole and was sufficient to deter IBM from future wrongdoing.  
This decision is adequately supported and is not clearly erroneous.  
Considering the wide latitude the district court has in fashioning
an appropriate remedy we find no abuse of discretion on the part of
the district court in determining that prejudgment interest was not
appropriate.
                       C.  Reinstatement
    Following the jury trial the trial court held a full
evidentiary hearing on the issue of reinstatement.  It found that
the position Criado's held at IBM was eliminated soon after her
discharge.  Furthermore, it found that even if an alternative
position existed at IBM for which Criado was qualified, it would
not order reinstatement because of Criado's past relationship with
her former supervisors.  The court noted the nature of Criado's
disability and found that given the history of events between
Criado and IBM reinstatement was not a feasible remedy.  The
decision of whether to order reinstatement is within the district
court's discretion, see Rosario-Torres, 889 F.2d at 320, and it
adequately supported that decision.  We find no error in the denial
of Criado's request for reinstatement.
                        IV.  Conclusion
    We AFFIRM the district court on all issues raised by IBM
and Criado.

</body>

</html>