F I L E D
United States Court of Appeals
Tenth Circuit

MAR 25 2003

PATRICK FISHER
Clerk

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

DEBORAH R. REVELS,

      Plaintiff-Appellant,

v.

LUCENT TECHNOLOGIES, INC.;
and LOCAL 1599 INTERNATIONAL
BROTHERHOOD OF ELECTRICAL
WORKERS,

      Defendants-Appellees.

No. 02-6164
(W.D. Oklahoma)
(D.C. No. CIV-01-724-H)

**ORDER AND JUDGMENT**[*]

Before **HENRY**, **BRISCOE**, and **HARTZ**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously to decide this case on the briefs without oral argument. *See* Fed. R.

App. P. 34(2)(2)(C). The case is therefore ordered submitted without oral

argument.

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff DeBorah Revels, proceeding pro se, appeals the district court's grant of summary judgment in favor of her former employer, Lucent Technologies, Inc., and Local 1599 of the International Brotherhood of Electrical Workers ("Union"). In her complaint, she alleged that Lucent's refusal to allow her to return to work after a 52-week disability leave violated the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213, and § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185. She also claims that the Union violated the ADA and that it breached its obligations to her by not filing a grievance against Lucent. For the reasons stated below, we affirm the judgment of the district court.

## I. BACKGROUND

The district court summarized the uncontroverted material facts, including the following: Ms. Revels began working for Lucent at its Oklahoma City manufacturing facility in November 1977. She was terminated from her position as a Technical Support Analyst on August 9, 2000.

Ms. Revels had left work on August 2, 1999 for dental surgery. On August 7, 1999, while she was still on leave, her son died from an accidental gunshot wound. Ms. Revels started wage continuation payments under Lucent's Sickness and Accident Disability Benefit Plan ("SADBP," or "Plan"), an ERISA welfare

benefit program. The Plan provides benefits for employees disabled by sickness or accident who meet certain requirements, including placing themselves under a physician's care and following his or her recommended treatment. The benefits could last a maximum of 52 weeks. Ms. Revels's initial benefit termination date was August 8, 2000. On that date or earlier, provided the Lucent Health Services office gave its approval, she could return to work.

Ms. Revels's primary care givers sent Lucent's Health Services organization several Certification of Illness or Disability forms over the course of the next year. The August 20, 1999 form indicated that Ms. Revels was being treated weekly for "depression/grief" and that the date for her release to return to work was "unknown." Lucent's App. at 35 (declaration of Cynthia Williams ¶ 5), 52. The next Certification of Illness or Disability form, dated October 6, 1999, was sent by Dr. Dean Hinz. It indicated that Ms. Revels was "being seen weekly" for "stress/grief/depression." *Id.* at 35, 53. Dr. Hinz sent a form with similar content on November 1, 1999. *Id.* at 35, 54. Neither form indicated a "return to work" date. *Id.* at 136-37.

Ms. Revels was also seen by Lucent's staff physician, Dr. Peyton Osborne. According to an October 20, 1999 report, he noted that Ms. Revels was "still grieving," rendered a diagnosis of "depressive disorder, " and suggested counseling. *Id.* at 51. The disability report generated by Lucent indicates that Dr.

Osborne's staff made various attempts to schedule an appointment with Ms. Revels in mid- to late November. The reports dated in late November indicate that Ms. Revels needed to supply further documentation "verifying her disability status" and that although frequent counseling had been urged by Drs. Hinz and Osborne, Ms. Revels had been unsuccessful in setting up appointments because of insurance problems. *Id.* at 48.

After a November 24, 1999 appointment with Dr. Osborne, the doctor's notes indicate that Ms. Revels had at last managed to get approved to see a counselor. The notes also indicate that Dr. Osborne considered Ms. Revels to be in "no distress." *Id.* at 49. At this point, Dr. Osborne "notified Dr. Hinz" who "voiced no objection" to Ms. Revels return to work. *Id.* Apparently, a trial return to work authorized by Lucent's staff doctor did not separately require a written medical release from Dr. Hinz.

Ms. Revels was to return to work on November 29, 1999, but instead returned to Dr. Hinz for treatment. Lucent extended Ms. Revels wage continuation payments for one work day, and thus the payments under the SADBP were to continue through August 9, 2000.[1]

---

[1] Ms. Revels, citing *Ralph v. Lucent Technologies, Inc.*,135 F.3d 166, 171-72 (1st Cir.1998), argues that her health benefits should have been extended until August 12, 2000, because she was entitled to credit for November 25 and 26, which were holidays. We agree with the district court, that even if Lucent miscalculated her return date by a day or two, the error does not change the

(continued...)

Lucent received subsequent healthcare provider's reports from Dr. Hinz on December 23, 1999 and March 8, and May 4, 2000, each indicating that Ms. Revels was disabled from working, and none indicating a recommended date for her return to work. On July 3, 2000, the Lucent benefits department sent Ms. Revels a letter explaining the expiration of her benefits and the ensuing termination of her position under the SADPB on August 9, 2000. The note advised that Ms. Revels could apply for Lucent's Long Term Disability Plan benefits through the completion of various enclosed forms.

On August 4, 2000, Anne Wallace, a nurse from Lucent's Health Services department telephoned Ms. Revels and specified that the return to work medical release must specify "what ha[d] physically changed" before she could be allowed back to work. *Id.* at 61. In contrast, Ms. Revels testified that Anne Wallace, from Lucent's Health Services department, had told Ms. Revels that she needed to report to work by August 9, 2000 with a medical release or her employment would be terminated.

On August 8, 2000, after an office visit, Dr. Hinz's notes state that Ms. Revels suffering from post traumatic stress disorder, from kidney stone pain, and from lumbar disk pain. *See id.* at 144. Dr. Hinz's notes indicate that she was

---

[1](...continued)
outcome as to either Lucent or the Union. Unlike the plaintiff in *Ralph*, who had medical letters supporting a provisional return to work, Ms. Revels is not entitled to a formal extension of the time here.

"still unable to function as per her job description." *Id.* He also indicated she was "totally disabled" and was not a suitable candidate for trial employment. *Id.* at 147.

However, on August 9, 2000, Ms. Revels telephoned Dr. Hinz's office and asked for a release to return to work, explaining that without the note, she would be terminated. Notwithstanding his conclusions after the previous day's office visit, Dr. Hinz granted Ms. Revels's request and supplied a Certification of Illness or Disability form that she was released to return to work "pending ortho consult." *Id.* at 68.

Ms. Revels arrived at Lucent's Health Services office with Union representative Janet Garton on the afternoon of August 9, 2000 with the note from Dr. Hinz. When Ms. Revels attempted to return to work, a nurse contacted Dr. Hinz's office for an explanation of what had medically changed in Ms. Revels's diagnosis. The nurse's notes indicate that Dr. Hinz's office would only say that Ms. Revels had requested to be released to return to work. *Id*. at 62. Nurse Wallace deemed this explanation to be untenable and unsatisfactory, and she told Ms. Revels that she "was not being accepted for work." *Id.* Lucent then terminated Ms. Revels employment. The Union did not request an independent medical examination or file a grievance regarding Ms. Revels's termination.

Before July 2000, Dr. Osborne worked in the Health Services department and regularly examined employees who were returning to work. However in July, the Health Services office transitioned to a nurse-based clinic, and Dr. Osborne was no longer employed by Lucent. Lucent had hired a contract physician to staff the office eight hours a week. In the alternative, the nursing staff was empowered to authorize a return to work, provided an adequate explanatory release was supplied. Although Ms. Revels was not notified of this new nurse-based system, a Union representative testified that it was unwritten "past practice" that a return to work release for an absence of 50 to 52 weeks should include an indication of what had improved in the employee's diagnosis. Lucent's App. at 176 (dep. of Janet Garton, dated Nov. 30, 2001).

The district court granted summary judgment to the defendants. Ms. Revels, who was represented in the district court proceedings by counsel, is now proceeding pro se and timely appealed.

## II. DISCUSSION

We review the district court's grant of summary judgment de novo. *Wolf v. Prudential Ins. Co. of Am.*, 50 F.3d 793, 796 (10th Cir. 1995). Summary judgment is appropriate when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Id.* (quoting

Fed. R. Civ. P. 56(c)).  Because Ms. Revels proceeds pro se, we must liberally construe her pleadings.  *McBride v. Deer*, 240 F.3d 1287, 1289 (10th Cir. 2001).

Ms. Revels contends that Lucent and the Union discriminated against her in violation of the ADA and § 301 of the LMRA.  Specifically, Ms. Revels argues that Lucent violated (1) the ADA when it "regarded" her as disabled and refused to accept her medical release on August 9, 2000, thus refusing to allow her to return to work; and (2) the LMRA by not following Lucent's procedures when she attempted to return to work.  She maintains that the Union violated the ADA and breached its duty of fair representation when it refused to file a grievance on her behalf and assert her rights under the FMLA.[2]  After reviewing the contentions against Lucent, we will then turn to those against the Union.

### A. ADA Claim – Lucent

Ms. Revels contends that Lucent violated the ADA by intentionally discriminating against her when it refused to allow her to return to work because Lucent regarded her as disabled.  Lucent denies any discriminatory intent and instead argues that it did not rehire Mr. Revels because she failed to produce a

---

[2]  Ms. Revels repeatedly asserts her right to a jury trial.  Because we affirm the grant of summary judgment for Lucent, we have determined "that there is no genuine issue as to any material fact."  Fed. R. Civ. P. 56(c).  There is thus no need for a jury to make any factual findings.

-8-

satisfactory physician's opinion that she was medically fit to resume employment, as required under its unwritten policy.

The ADA prohibits employers from discriminating against individuals on the basis of disability. 42 U.S.C. § 12112(a). To survive summary judgment on her claim for disability discrimination under the ADA, Ms. Revels "bore the burden of raising a genuine issue of material fact on each element of her prima facie case." *Doyal v. Okla. Heart, Inc.*, 213 F.3d 492, 495 (10th Cir. 2000). To do so, she had to show "(1) she is a disabled person as defined by the ADA; (2) she is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) the employer discriminated against her because of her disability." *Id.*

"Disability is a term of art under the ADA." *Id.* To satisfy the statutory definition of disability, Ms. Revels had to show either that she had "a physical or mental impairment that substantially limits one or more of [her] major life activities," or that she had "a record of such impairment," or that she was "regarded as having such an impairment." 42 U.S.C. § 12102(2)(A)-(C). Ms. Revels maintains that she qualifies as a "disabled" person under the ADA because Lucent refused to allow her to return to work because it "regarded" her as being disabled under § 12102(2)(C).

We evaluate discrimination claims predicated upon the ADA using the burden-shifting analysis first used to examine Title VII employment

discrimination claims in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), and later developed in *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252-56 (1981) and *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506-12 (1993).  Under this burden-shifting framework, plaintiffs who make a facial showing that they are "qualified, disabled persons" under the ADA, create a presumption that the defendant engaged in unlawful discrimination. *Hicks*, 509 U.S. at 506.  Once that presumption is created, the defendant must produce evidence supporting a nondiscriminatory explanation for its decision.  *Id.* at 506-07.  This explanation, of course, must not be mere pretext.  *Id.* at 515.

Lucent maintains that Ms. Revels cannot establish a prima facie case, and even if she could, that it proffered a legitimate nondiscriminatory reason for not allowing her to return to work–that is, her doctor's note did not provide an adequate explanation of the change from "permanently disabled" to "able to work."  Because we decide below that Lucent offered a legitimate reason for not rehiring Ms. Revels, and no evidence indicates that this reason was pretextual, we need not address the issue of whether Ms. Revels was indeed "qualified and disabled" under the ADA.

Under the assumption that Ms. Revels is qualified and disabled for purposes of the ADA, the burden of production shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the challenged employment decision.  *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995).  Lucent

-10-

maintains that it refused to allow Ms. Revels to return to work because (1) the medical release did not explain what had medically changed to explain why she was then able to return to work; and (2) based on past practice and based on the previously received health care provider notes, Lucent had reason to expect that such an explanation would be forthcoming.

Construing Ms. Revels's allegations liberally, as we must, she contends that Lucent did not follow its established procedures when it refused to allow her to return to work. Lucent admits it was transitioning to a nurse-based facility, and there is no suggestion that it told Ms. Revels that no doctor would be present on August 9, 2000. However, we agree with Lucent that had a physician been present, that she too would have contacted Dr. Hinz's office for clarification, and that the outcome would remain unchanged.

Lucent also attacks the Dr. Hinz release note as a "sham," pointing to Dr. Hinz's notes that the release was given "solely" at Ms. Revels's request. Lucent's App. at 148. Sham or not, Lucent concedes that the medical release requirement was not written in its disability plan. However, the Union and Lucent aver that the requirement was established practice and we agree that "[t]here is no evidence that Lucent fabricated the policy." Aples' Br. Addendum (Dist. Ct. Order, filed May 6, 2002), at 12 n.36. The goal of the release requirement–to ensure that returning to work does not hamper recovery–is rational and legitimate. We hold that Lucent has articulated a legitimate, non-discriminatory reason for refusing to

-11-

allow Ms. Revels to return to work. *See Holtzclaw v. DSC Communications Corp.,* 255 F.3d 254, 259 (5th Cir. 2001) (holding written medical release was "not probative evidence" of employees "ability to work"; no medical evaluation performed before letter was written). We also hold that Ms. Revels has adduced no proof that Lucent's stated reasons were pretextual.

### B. LMRA Claim - Lucent

Ms. Revels appears to argue that Lucent failed to comply with the Independent Medical Evaluation provisions of a Local Letter attached to the Collective Bargaining Agreement. We agree that because the Union never requested an independent medical evaluation, Lucent's obligations were not triggered. In addition, Dr. Hinz's August 9, 2000 letter was incomplete and inconsistent with his previous evaluations. The district court properly granted summary judgment to Lucent on this claim.

### C. ADA Claim - Union

We also agree with the district court's conclusion that Ms. Revels's claims against the Union fail. The district court noted that Ms. Revels was unclear as to what she was alleging: "When asked whether it was her position that the union did not discriminate against her because it regarded her as disabled, the plaintiff replied: 'I have never mentioned discrimination.'" Aples' Br. Addendum at 15

(Dist. Ct. Order, filed May 6, 2002).   On appeal, Ms. Revels notes that she was largely dependent upon her counsel at the time, that discovery was not yet complete, that she hoped for a jury trial, and that she lacked "clarity" after a "very tedious" deposition.  Aplt's Br. at 22-23.  "Despite the liberal construction afforded pro se pleadings, the court will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues." *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (citation omitted).  Ms. Revels's ADA claim against the Union suffers from the identical deficiencies as her claim against Lucent, and was properly dismissed.

### D. Fair Representation Claim–Union

Ms. Revels lists the dismissal of this claim in her "Issues Presented for Review (iii)," Aplt's Br. at 5, but she appears to offer no further argument or discussion of the issue.  Before the district court, Ms. Revels claimed that the Union's failure to file a grievance was a breach of its obligations to her.  Given our above analysis, we agree that the reasoning of the district court in dismissing this claim was sound.  There is no evidence that the Union arbitrarily "ignored a meritorious grievance or otherwise discriminated against [Ms. Revels], acted in bad faith or engaged in perfunctory conduct."  Aples' Br. Addendum, at 17 (Dist. Ct. Order, filed May 6, 2002) (citations omitted).

## III. CONCLUSION

Accordingly, we AFFIRM the district court's grant of summary judgment to the defendants.

Entered for the Court,


Robert H. Henry
Circuit Judge