**Nancy AXELROD and Nicholas Axelrod Panagopoulos, Plaintiffs,**

v.

**PHILLIPS ACADEMY, ANDOVER, Defendant.**

**No. Civ.A. 99–10054–EFH.**

United States District Court, D. Massachusetts.

Feb. 17, 1999.

Marc Redlich, Law Offices of Marc Redlich, Boston, MA, Merle Ruth Hass, Law Offices of Marc Redlich, Boston, MA, for Nancy Axelrod, Nicholas Axelrod Panagopoulos, plaintiffs.

Philip Burling, Foley, Hoag & Eliot LLP, Boston, MA, for Phillips Academy, Phillips, Academy Andover, defendant.

## MEMORANDUM

HARRINGTON, District Judge.

This matter is before the Court on Plaintiffs' Motion for a Preliminary Injunction. Plaintiffs Nicholas Axelrod Panagopoulos and Nancy Axelrod, Nicholas' mother, have brought suit against Phillips Academy, Andover ("Phillips Academy") claiming that Phillips Academy violated state and federal laws against disability discrimination and breached its contract with the plaintiffs by requiring Nicholas to withdraw after the first trimester of his senior year. The present motion requests that this Court re-admit Nicholas at Phillips Academy until the resolution of the underlying litigation. For the reasons below, the Court grants plaintiffs' motion.

## FACTS

Before he was forced to withdraw, Nicholas was a senior at Phillips Academy. Nicholas had attended Phillips Academy since the ninth grade and was hoping to graduate with his class this spring. By all accounts Nicholas is a very bright student—he scored a 1410 on the SAT and he was a National Merit Scholarship Finalist. Despite his innate intelligence, however, Nicholas struggled with the Academy's academic requirements, maintaining a cumulative C average and flunking four classes in his first three years. Based on Nicholas' performance, Phillips Academy asked Nicholas' parents to voluntarily withdraw Nicholas after his freshman year, sophomore year, and junior year.

It is disputed as to when Phillips Academy was told that Nicholas had Attention Deficit/Hyperactivity Disorder ("ADHD"), but no later than at the start of his junior year, Ms. Axelrod informed Phillips Academy that

Nicholas had been diagnosed with ADHD. ADHD is a learning disorder. Nicholas manifests ADHD by his continuing problems with attention to, organization of, and planning for his academic assignments. When Ms. Axelrod informed Phillips Academy of Nicholas' ADHD, she provided a letter from Dr. Larry Seidman to Phillips Academy. Dr. Seidman's letter recommended several steps to be made by Phillips Academy that might help Nicholas to succeed, including: one-to-one instruction; avoiding cramming for exams; breaking up assignments into smaller projects; pairing less interesting assignments with more interesting assignments; creating a distraction-free environment to study in; being flexible with study goals; providing immediate feedback; *providing additional time for exams;* and waiving language requirements. Phillips Academy treated Dr. Seidman's recommended accommodations as requests and responded positively by offering tutors; having its cluster staff monitor Nicholas' studying; urging Nicholas to get rid of potential distractions, such as his computer, stereo and phone; notifying teachers that Nicholas had a learning difference and *that he should be given extra time on exams;* and waiving foreign language requirement.

In the fall term of his junior year, Nicholas thrived, having one of his best trimesters. This newfound success, however, was short-lived. In the spring term, Nicholas failed Math. Phillips Academy responded by again advising Nicholas' mother to voluntarily withdraw Nicholas. In a June, 1998 letter, Peter Merrill, Nicholas' house counselor, advised Ms. Axelrod that "Nicholas is too often unprepared and late with assignments, misses too many classes and regularly fails to meet expectations in virtually every course." The letter concludes, "[i]n sum, we believe that Phillips Academy is a demonstrably inappropriate school for Nicholas." In a separate letter, Linda Carter–Griffith, Nicholas' cluster dean, advised Nicholas that the faculty had voted to formally advise Nicholas that he should withdraw. This letter also explained that if Nicholas returned he would be on "General Warning," which would allow Nicholas one term with which to improve his academic performance. If Nicholas had five or more unexcused absences, had one or more unsatisfactory effort grades, or failed any classes, then Nicholas would be required to withdraw. Despite this warning, Ms. Axelrod enrolled, and Phillips Academy accepted, Nicholas for his senior year.

Toward the beginning of the fall trimester, Nicholas' teachers were informed that he had specific learning differences. In a memorandum from the Director of Academic Counseling dated September 24, 1998, Nicholas' teachers were informed that Nicholas "has been documented as having specific learning differences that entitled [him] to receive certain accommodations in the classes for which the student requests them," including additional time on exams. This memorandum alerted Nicholas' teachers that "[m]any students who are entitled to extra time do not request it on a regular basis, so you may not receive such a request from this student."

The event that precipitated his involuntary withdrawal in December, 1998 was an unsatisfactory effort grade in a biomedical ethics class, RelPhil 46. Ms. Dianne Moore, the teacher of RelPhil 46, gave Nicholas a "U" effort grade because of his unwillingness to do assigned reading when due and his failure to submit written work on time. In her affidavit, summarized below, Ms. Moore explained her reasons for giving Nicholas a "U." Early in the term, Ms. Moore determined that Nicholas was not doing the reading. To ensure he was doing the assignments, Ms. Moore required Nicholas to turn in outlines of the reading assignments, which he did for the balance of the term. In the first week of November, Ms. Moore met with Nicholas and warned him that dramatic improvements in his level of preparation were necessary. At this meeting, Ms. Moore explained the importance of reading, outlining, and reflecting on the material. Ms. Moore and Nicholas entered into an understanding whereby Nicholas would do all remaining work carefully and on time. Ms. Moore offered to meet with him anytime. She broke the remaining work into a series of small blocks. Ms. Moore warned Nicholas that if he did not stick to their understanding he would get a "U." Ms. Moore contacted Nicholas' academic advisor and house counselor

and warned them that Nicholas risked getting a "U." She expressed concern that Nicholas did not think there was a problem. Ms. Moore required all students to draft their final paper in a series of small steps. Nicholas' bibliography, the first step, was poor so Ms. Moore suggested sources Nicholas could look to for help with his paper. Nicholas did not comply with the requirement that he turn in a revised bibliography on November 9, nor did he turn in the third step, the required draft of his introduction, bibliography and outline on November 21.

On this date Ms. Moore informed Nicholas that he had failed to meet the basic requirements of the class and that his effort in the class was unsatisfactory. She told him that he could remove the effect of the "U" by "demonstrating a clear effort to meet the remaining requirements of the class." She reminded Nicholas that the latest draft of the bibliography, introduction and outline was due on November 23 at 9:00 A.M.

On November 23 Ms. Moore sent Nicholas a formal letter stating that his effort was unsatisfactory. She went on to state:

> I am hopeful that your work for the remainder of the term will demonstrate a clear effort on your part to meet the remaining requirements in a timely fashion and to produce work that represents your capabilities. If you do so, I will be very pleased to report this effort in my instructor comment for the term. It is my ardent wish that this unsatisfactory effort grade serves to motivate you to rise to your potential here at the close of the term.

Nicholas did not meet the 9:00 A.M. November 23 deadline. He submitted his draft paper sometime after 3:30 P.M. on November 23 and Ms. Moore was in possession of the draft paper on November 24.[1] Ms. Moore did not make her comments on Nicholas' draft paper prior to the start of the Thanksgiving holiday period and he had only two days in which to complete his final paper. Nicholas did not incorporate Ms. Moore's comments which she made on the draft paper in his final paper, which he submitted on time on December 4. For this reason he received a poor, but passing grade, on his final paper. Ms. Moore stated that she was unaware that Nicholas had ADHD when she gave him an unsatisfactory grade for effort and it is clear that Dr. Seidman's findings as to Nicholas' disorder and his recommendations were never communicated by the administration to Ms. Moore. Nicholas earned a passing grade for the course. A full meeting of the Phillips Academy Faculty voted 168–2 to require Nicholas to withdraw.

Nicholas' affidavit states that Ms. Moore was unaware that he had ADHD, and when he tried to explain the nature of his condition, and its manifestations and limitations, Ms. Moore told him that it made no difference.[2] This is supported by Ms. Axelrod's affidavit, which states that Ms. Moore, whom she approached after learning that Nicholas was about to be expelled after receiving a "U" for his effort grade, said "she believed Nicholas had chosen to get work in late, saying, 'he had made his choices.' I asked whether she had considered that because of his ADD, he was unable, rather than unwilling to get his assignments filed on time. Her response was that if this was a medical issue, then I should speak to Dr. Avery [Dean of Studies], and that she would not object to her "U" being reversed if it were a result of a medical condition."

On February 5, 1999 during the course of this action, the Court ordered Ms. Moore to file an affidavit answering the following questions:

1. If Professor Moore had been aware that Petitioner Panagopoulos' failure to meet assignment deadlines was a result of his having too little time to complete his assignments and such was caused by his learning disability, would she have made any further accommodation for him?

2. If yes, set forth the accommodation(s).

3. If no, set forth the reason.

---

1. Nicholas states that he submitted the paper on November 23 after 3:30 P.M.

2. Nicholas asserts that he specifically asked Ms. Moore for additional time (one or two days) to complete certain assignments and that she denied these requests.

She answered that she would not make any further accommodation for him. Her reason was that

- Nick had two full days to make some effort to incorporate my comments into his final draft and he chose not to do so. This was not a deadline problem.... In the context of Nick's earlier performance in the course, I would find it very hard to assign his unwillingness to make the effort to edit his paper to a problem with deadlines or to a fundamental incapacity related to his learning disorder.... It is my firm belief that it was well within his capacity to meet the basic requirements of this course in spite of his learning disability.

### PRELIMINARY INJUNCTION

To obtain a preliminary injunction, plaintiffs must establish four elements: (1) that they are likely to succeed on the merits at trial; (2) that they will suffer irreparable harm if the preliminary injunction is not granted; (3) that the balance of hardships favors the plaintiffs; and (4) that a preliminary injunction is in the public interest. *See Ross–Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 15–16 (1st Cir.1996). The last three factors favor granting the preliminary injunction. If the Court denied the preliminary injunction, Nicholas would be irreparably harmed because he would not graduate with his class, he could not attend college in the fall, and he would suffer the stigma of expulsion. This damage to Nicholas outweighs any institutional damage to Phillips Academy. Additionally, the public interest is supported by enforcing the Americans with Disabilities Act (ADA). The sole remaining question is whether the plaintiffs are likely to succeed on the merits. To determine the likelihood of success on the merits, the Court must assess the plaintiffs' causes of action. Here, the plaintiffs' complaint alleges three causes of action: breach of contract, discrimination, and equity.[3]

### BREACH OF CONTRACT

The gravamen of the breach of contract claim is that the plaintiffs had a con-tract with Phillips Academy, whereby the plaintiffs paid the Academy over $90,000 in return for the Academy educating and graduating Nicholas. Plaintiffs allege that Phillips Academy breached this contract by expelling Nicholas six months before he was to graduate. The Court finds that this cause of action is unlikely to succeed. Any contract between the parties included conditions requiring Nicholas to achieve a minimum academic performance. Ms. Axelrod was informed by Phillips Academy that Nicholas would be forced to withdraw if he had five or more unexcused absences, had one or more unsatisfactory effort grades, or failed any classes then Nicholas would be required to withdraw. Nicholas failed to meet one of these explicit conditions.

### DISABILITY DISCRIMINATION

Plaintiffs have sued under both the Federal Americans with Disabilities Act and its Massachusetts counterpart. Title III of the ADA states, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns ... or operates a place of public accommodation." 42 U.S.C. § 12182(a). To prevail on an unlawful discrimination claim, plaintiffs must prove: (1) Nicholas is a disabled individual within the meaning of the Act; (2) that with or without reasonable accommodation he was a qualified individual able to meet all of the school's requirements; and (3) that the school discharged him because of his disability. *See, e.g., Criado v. IBM Corp.*, 145 F.3d 437, 441 (1st Cir.1998); *Bercovitch v. Baldwin School, Inc.*, 133 F.3d 141, 154 (1st Cir. 1998). The law does not require an academic program to compromise its integral criteria to accommodate a disabled individual. *See Southeastern Community College v. Davis*, 442 U.S. 397, 406, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979).

---

**3.** The Court only considered the equity count in connection with the Motion for a Preliminary Injunction in this Memorandum.

Upon review of the record in this case, the Court finds that the plaintiffs have established a reasonable likelihood of success on the merits. Moreover, given that the plaintiff would be gravely harmed by denying the injunction, the plaintiffs' burden to show likelihood of success on the merits is less than it would be if the balance of harms were equal. *See William Inglis & Sons Baking Co. v. ITT Continental Baking Co.,* 526 F.2d 86 (9th Cir.1975) ("It is not necessary ... that the moving party be reasonably certain to succeed on the merits. If the harm that may occur to the plaintiff is sufficiently serious, it is only necessary that there be a fair chance of success on the merits.") (Internal citation omitted).

The Court finds it reasonably probable that, as of August 4, 1997, the Defendant Phillips Academy was on notice that Nicholas suffered from ADHD, the consequence of which was the inability to concentrate on and to organize his studies and procrastination and delay in completing his academic work. Ms. Moore had been advised by memorandum on September 24, 1998 that Nicholas had specific learning *differences* that entitled him to receive certain accommodations in classes, such as receiving extra time to complete his assigned academic tasks. Ms. Moore was alerted that "many students who are entitled to extra time do not request it on a regular basis, so you may not receive such a request from *this student.*" (Emphasis supplied). This exhortation was an acknowledgment that a teacher of a high school student, especially of a student who boards at school away from his parents, is placed in relation to that student *in loco parentis* and must be vigilant in seeing that the rights of the student placed in her charge are fully respected. Yet, Dr. Seidman's specific findings as to the nature and symptoms of Nicholas' disorder had not been shared with her by the administration of Phillips Academy. She didn't even learn that Nicholas suffered from ADHD until December 2, after she had already given him a "U" for effort.

The Court finds that Ms. Moore told Nicholas on November 21 that he could remove the effect of the "U" by demonstrating "a clear effort to meet the remaining require-

ments" and reminded him that the latest draft of his paper was due on November 23. Her formal letter of November 23 stating that his effort was unsatisfactory was to motivate him to meet those "remaining requirements" so as to have the "U" removed. Nicholas did not meet the November 23 deadline, but Ms. Moore was in possession of the draft paper on November 24. Nicholas turned in a poor, *albeit a passing,* final paper on time on December 4 and received a passing grade for the course.

The Court finds it reasonably probable that Ms. Axelrod spoke to Ms. Moore after learning that Nicholas was about to be expelled as a result of Ms. Moore's giving him a "U" for effort. Ms. Axelrod asked Ms. Moore whether she had considered that, because of her son's ADHD, he was unable, rather than unwilling, to get his assignments done on time. Ms. Moore's response was that, if this was a medical issue, Ms. Axelrod should speak to Dr. Avery, and that Ms. Moore would not object to her "U" being removed if it were the result of a medical condition.

The Court finds it reasonably probable that Ms. Moore had indicated to Nicholas that she did not know that he had ADHD and when he tried to explain the nature of his condition and its manifestations and limitations, Ms. Moore told him that it made no difference to her, and she concedes that she did not know of his condition until December 2.

The Court finds that Ms. Moore did not know that Nicholas suffered from ADHD when she gave him a "U" for his effort grade, and, thus, was unaware of the exact nature and symptoms of Nicholas' disability, although the administration at Phillips Academy did know and had failed to advise her. Therefore, she did not even have the opportunity to assess whether any further reasonable accommodation should be given to him. It is reasonably probable that Nicholas' failure to meet assignment deadlines and his submission of careless work was the result of his having too little time to complete his assignments and this was a consequence of his learning disorder.

When Ms. Moore admonished Nicholas on November 21 that his effort was unsatisfactory and attempted to motivate him by exhorting him that the "U" could be removed if he demonstrated "a clear effort to meet the remaining requirements," the only requirements remaining were the submission of the draft paper on November 23 and the final paper on December 4.

Nicholas did submit his draft paper by November 24 at the latest and his final paper was submitted on time on December 4.

Since Nicholas had submitted his draft paper a day late, he did not have Ms. Moore's comments on his draft paper for incorporation in his final paper during the entire Thanksgiving holiday period when he was in the process of composing the final paper.

The reason why Ms. Moore was unable to make her comments on his draft paper prior to the start of the holiday period is not clear and has not been fully explained by her.[4] However, as a consequence, Nicholas had only two days after the holiday period ended in which to complete his final paper and to incorporate her comments therein. His failure to incorporate her comments resulted in his final paper receiving a poor, but passing, grade. And he did earn a passing grade for the entire course.

If Ms. Moore had been aware of the nature and symptoms of ADHD at the time when she gave Nicholas a "U" for effort, and if he had been aware that Dr. Seidman had requested that Nicholas be given extra time to complete his academic tasks, the Court believes that a reasonable accommodation would have been for Ms. Moore to have given Nicholas an extra day to submit his draft paper.

And, if she was unable to make her comments on his draft paper prior to the start of the holiday period, the Court believes that a reasonable accommodation would have been for Ms. Moore to have given him a reasonable period of time, more than two days, in which to fully complete his final paper. The one-day delay in submitting the draft paper

resulted in Nicholas' not having available the holiday period in which to complete a more carefully drafted final paper.

Again, it is noted that the final paper, although carelessly done and lacking the incorporation of Ms. Moore's comments on his draft paper, was timely submitted and received a passing grade. And again he did receive a passing grade for the course.

If the reasonable accommodation of allowing Nicholas extra time to complete his two post November 21 paper assignments had been granted, the extra time requested by Dr. Seidman, of which request Ms. Moore had not been made aware by the administration of Phillips Academy, Nicholas would have demonstrated "a clear effort to meet the only remaining requirements" warranting the removal of the "U."

The Court believes that it is reasonably probable that the apparent lack of effort on Nicholas' part was a natural and probable consequence of his learning disorder, rather than an unwillingness to complete his poor, but passing, paper assignments on time. Since his failure to meet his assignment deadlines could reasonably be found to have been caused by his learning disability, Ms. Moore, in accordance with her statement to Ms. Axelrod, should have reasonably "reversed" the "U" for effort.

If Nicholas had failed Ms. Moore's course, which he did not, or if he had been a disciplinary problem, which he was not, this would have been a different case. The Court grants this preliminary injunction because the Court is deeply troubled that Nicholas was expelled from Phillips Academy after the first trimester of his senior year for his perceived lack of effort, even though he passed all of his classes. Given that ADHD affects Nicholas' attention, organization, and planning, and that Ms. Moore did not know that Nicholas had ADHD when she gave him the "U," for effort, the Court finds a reasonable probability of success on the merits to warrant keeping Nicholas at Phillips Acade-

---

4. Ms. Moore was angry at Nicholas for his failure to perform up to what she believed to be his academic potential. Yet, this failure was proba-

bly due to the learning disorder of which she was unaware.

my until the merits of the case can be resolved.

Plaintiffs' Motion for a Preliminary Injunction is granted and the Defendant Phillips Academy is ordered to re-admit the Plaintiff Nicholas Panagopoulos as a student in good standing pending resolution of the case on its merits. A trial on the merits is scheduled for March 15, 1999.

SO ORDERED.